**GRIM et al., Appellants,**

v.

**SCHOTTENSTEIN, ZOX & DUNN CO., L.P.A., et al., Appellees.**

[Cite as *Grim v. Schottenstein, Zox & Dunn Co., L.P.A.* (1992), 82 Ohio App.3d 450.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1440.

Decided Aug. 27, 1992.

*McCarthy, Palmer, Volkema & Becker* and *Robert G. Palmer*, for appellants.

*Lane, Alton & Horst* and *Richard O. Wuerth*, for appellees.

---

WHITESIDE, Judge.

Plaintiffs, Charles E. Grim, Multipress, Inc., and National Industrial Acquisitions Corporation, appeal from a judgment of the Franklin County Common Pleas Court finding their claims should be barred by the applicable statute of limitations, and raise two assignments of error as follows:

"I. The lower court erred in holding that the tolling agreement was breached by plaintiffs-appellants, and, as a result, plaintiffs-appellants' claims are barred.

"II. The lower court erred in ruling that plaintiff Grim's tort claims were part of his bankruptcy estate."

Plaintiffs' claims are for alleged legal malpractice in representation of plaintiffs at the trial level as defendants, in the case which eventually resulted in the decision in the Supreme Court case of *Worrell v. Multipress, Inc.* (1989), 45 Ohio St.3d 241, 543 N.E.2d 1277.

At the common pleas court level, the case was tried to a jury, resulting in an award against plaintiffs herein (defendants in that case) in the amount of $950,000. Following this adverse decision, plaintiffs discharged defendants as their legal counsel; however, the parties entered into a tolling agreement on October 7, 1987. This action was commenced more than two years later on November 17, 1989, subsequent to the Supreme Court's determination in *Worrell*, the decision of which was rendered on September 13, 1989.

There is no question but that the action was commenced after the running of the ordinary statute of limitations or that the parties entered into an

agreement labeled "Agreement Tolling Statute of Limitations," dated as of October 7, 1987. The pertinent portion of that agreement provides that:

"1. Multipress agrees not to commence litigation against Schottenstein and Schottenstein agrees not to commence litigation against Multipress for a period of thirty days after an adjudication, from which there is no further appeal including any reconsideration hearing, of Franklin County Common Pleas Court Case Number 83CV–09–5495 (which is now pending in the Tenth District Court of Appeals Number 86AP–909).

"2. In the event that Multipress commences litigation against Schottenstein within thirty days after such final adjudication of the above-referenced case, Schottenstein will not assert by way of defense against Multipress the expiration or running of any applicable period of limitation during the period from the date of this agreement to thirty days after such final adjudication, and the period from the date of this agreement to thirty days after such final adjudication will not be referred to or considered in connection with any defense of laches asserted by Schottenstein against Multipress."

The issue becomes fuzzy because the Supreme Court decision from which there was no further appeal in *Worrell* resulted in a partial remand to the common pleas court, the final paragraph of the Supreme Court's decision stating, 45 Ohio St.3d at 250, 543 N.E.2d at 1285:

"For the reasons stated above, we affirm the court of appeals on the issues of breach of contract to convey stock, libel, and prejudgment interest. We reverse the court of appeals and remand the cause to the trial court, however, for a determination of proper damages to be awarded plaintiff for breach of the employment contract under the guidelines set forth in this opinion."

The original trial in the *Worrell* case resulted in a jury verdict for Worrell against Multipress in the amount of $500,000 damages for loss of employment, $300,000 damages for breach of an oral agreement to transfer stock, $50,000 in actual damages for defamation, and $100,000 in punitive damages. The trial court denied Worrell's motion for prejudgment interest. This court, upon appeal, found the $500,000 damages awarded for loss of employment to be speculative and ordered a new trial on that issue unless the plaintiff accepted a remittitur to $244,183. This court affirmed the $300,000 damage award related to the agreement to transfer stock and the $50,000 damage award for defamation as well as the punitive damages award and, also, affirmed the trial court's denial of prejudgment interest. The net result of the Supreme Court's determination in *Worrell* was that a substantial portion ($450,000) of the monetary judgment against Multipress was affirmed and placed into effect by the Supreme Court mandate, while only that portion ($500,000) involving damages for loss of employment was remanded for a

determination of proper damages to be awarded plaintiff. Although not expressly stated, the import of the Supreme Court decision is that the judgment against Multipress in favor of Worrell was affirmed upon the issue of liability for breach of contract and the cause was remanded only for the ascertainment of proper damages.

Multipress, therefore, contends that, at the very least, the judgment in the *Worrell* case had been finally adjudicated with respect to $450,000 in damages against Multipress, since no further proceedings would affect this judgment, it having been affirmed by the Supreme Court. Defendants, on the other hand, point out that the *Worrell* case was finally settled by the parties thereto on September 13, 1990, with a termination entry being entered on September 20, 1990. Defendants also point out that plaintiff Grim filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code, Title 11, U.S. Code, on March 2, 1989.

Contrary to the assertion of defendants that the *Worrell* litigation was not completed until September 20, 1990, the evidence before us does not support that contention. Rather, the *Worrell* litigation was terminated as to some of the claims prior to the commencement of this action. This dual-finality situation has caused confusion, including some in the trial court decision, which stated that "[t]he decision of the Court of Appeals was affirmed in part and reversed in part; the issue of damages was remanded to the trial court for further determination." This is incorrect because as to $450,000 of the damages, a final judgment was entered by the Supreme Court's affirmance of the judgment to the extent those damages were awarded. The cause was remanded to the trial court only with respect to the $500,000 damages awarded for breach of the employment contract.

The tolling agreement contemplated that the entire *Worrell* case would be finally adjudicated at the same time. This did not occur. Rather, the case was in effect bifurcated and final adjudication was made of some of the claims involving $450,000 in damages by the Supreme Court decision in *Worrell*, while the remaining damages, originally a $500,000 award, were remanded for a new determination in the trial court of the appropriate amount of damages. This placed plaintiffs in a dilemma. If they failed to commence litigation against defendants within thirty days after the finality of the Supreme Court decision, they were subject to a contention that they had breached the tolling agreement. They chose instead to bring the action which likewise gave rise to a contention that they had breached the tolling agreement because part of the *Worrell* litigation had not been finally adjudicated.

The tolling agreement itself is somewhat inconsistent. By Paragraph 1 of the tolling agreement, Multipress agreed not to commence litigation against

defendants "for a period of thirty days after an adjudication, from which there is no further appeal including any reconsideration hearing" of the *Worrell* case. The second paragraph of the tolling agreement, however, stated that "[i]n the event that Multipress commences litigation against Schottenstein *within thirty days after such final adjudication of the above-referenced case,* Schottenstein will not assert * * * the expiration or running of any applicable period of limitation during the period from the date of this agreement to thirty days after such final adjudication." (Emphasis added.) The fair meaning of the agreement, despite the inconsistency and ambiguity, is that any litigation is to be commenced within the thirty-day period following the final adjudication of the *Worrell* case. The action herein was commenced within thirty days after the final adjudication of that portion of the *Worrell* case finally adjudicated by the Supreme Court decision. On the other hand, this case was filed prior to the final adjudication of that portion of the *Worrell* case which the Supreme Court remanded to the common pleas court for a new damages determination.

█ As defendants point out, contracts should be construed as written, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, and *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411. The principles are correct; however, the issue here involves a factual situation not contemplated by the agreement. In fact, the factual situation before the court giving rise to the problem was neither mentioned, discussed nor determined by the trial court. As indicated above, the *Worrell* case was finally adjudicated with respect to some of the claims involving a damage award of $450,000 by the Supreme Court decision which became a final adjudication on October 18, 1989. See S.Ct.Prac.R. II(9). On the other hand, one of the claims in the *Worrell* case was not finally adjudicated by the Supreme Court decision but, instead, was remanded to the trial court for redetermination of damages. The language in the tolling agreement contemplated that the *Worrell* case would be finally adjudicated by one decision, and did not contemplate the situation which occurred: that only part of the case would be finally adjudicated with part of it not being finally adjudicated.

The syllabus in *Aultman* provides that when the parties have "an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides." Not only is there some ambiguity in the contract, as stated above, there is no plain meaning of the contract with respect to the situation that eventually occurred.

A contract should be given the effect that the expressed intent of the parties provides. Here, it was the intent of the parties that any action by Multipress against defendants should be commenced within thirty days after the final adjudication of *Worrell* against *Multipress.* With respect to those claims which were finally adjudicated by the Supreme Court decision, this case was commenced within such thirty-day period. On the other hand, with respect to the breach of employment contract claim in the *Worrell* case, this action was commenced prior to the final adjudication of that claim.

Upon this issue, we find that Multipress timely commenced this action with respect to that portion of the *Worrell* case finally adjudicated by the Supreme Court's determination. Such final adjudication meets the meaning of the tolling agreement. Such agreement did not contain any express language which would guide either party as to the appropriate action to be taken in the situation that occurred where part of the *Worrell* case was finally adjudicated. Rather, the first paragraph refers to "thirty days after *an adjudication,* from which there is no further appeal." (Emphasis added.) The second paragraph refers to "thirty days after *such final adjudication.*" (Emphasis added.)

There was *an* adjudication in the case from which there was no further appeal with respect to part of the claims involving a $450,000 damage award. As indicated, the article "an" modifies adjudication in the first paragraph and the second paragraph refers back to the language of the first paragraph as to the nature of the adjudication by utilization of the word "such." The word "an" is an indefinite article used as a function word before a singular noun and generally signifies "any" which is a synonym of "a." See *State ex rel. Roberts v. Snyder* (1948), 149 Ohio St. 333, 336, 37 O.O. 34, 35, 78 N.E.2d 716, 718. Since there was *a* final adjudication in the *Worrell* case which occurred within thirty days prior to the filing of this action, the tolling agreement requires that an action be commenced even though the entire case was not finally adjudicated. There is no express provision in the tolling agreement dealing with the situation where there is a partial final adjudication. The only reference is by the inference that may be raised through the use of the article "an" modifying the words "final adjudication."

Accordingly, the conclusion is inescapable that the tolling agreement was operative and effective with respect to those portions of the claims in the *Worrell* case finally adjudicated by the Supreme Court decision, so as to permit and require commencement of litigation against Schottenstein with respect to those claims within thirty days of the final adjudication of such claims. The trial court erred in finding such claims to be barred by the applicable statute of limitations. The first assignment of error is well taken.

■ By the second assignment of error, defendants contend that the trial court erred in finding that plaintiff Grim had no standing to bring his tort claims because they were part of his bankruptcy estate. Defendants contend and the trial court apparently found that if a cause of action accrues prior to the filing of a bankruptcy, the cause of action becomes the property of the bankruptcy estate, even if the debtor does not schedule the cause of action as an asset, and the discharged debtor no longer has the capacity to sue in his own behalf upon such causes of action. Although, in general, defendants' contention is correct, it does not necessarily permit or require dismissal of the case in which the claim is alleged. Plaintiff Grim contends that the principle advanced by defendants does not apply since he, plaintiff Grim, had no claim for relief upon his claim against defendants until after he filed his bankruptcy petition and was discharged in bankruptcy. He contends that the claims asserted herein by him were not part of his bankruptcy estate.

Despite the manner in which raised, the issue is essentially whether Grim's claims for relief have been brought by the real party in interest, whether Grim remains the party in interest to assert these claims, or whether the trustee in bankruptcy is the proper party to assert the claims. Civ.R. 17(A) provides in part that:

"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

This is the remedy that the trial court should have allowed, giving proper notification to the trustee in bankruptcy and allowing substitution of the trustee for plaintiff Grim, as plaintiff, if Grim's claims for relief be part of the bankruptcy estate. Plaintiff Grim raised this issue as part of the second assignment of error. To this extent, the second assignment of error is well taken.

For the foregoing reasons, both assignments of error are sustained, the judgment of the Franklin County Common Pleas Court is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and PETREE, JJ., concur.