### In re Robert S.

[Cite as *In re Robert S.* (1994), 98 Ohio App.3d 84.]

Court of Appeals of Ohio,
Huron County.

No. H–94–6.

Decided Dec. 9, 1994.

*Bryan Adamson,* for appellant.

*Richard R. Woodruff* and *Robert W. Gentzel,* for appellees.

---

*Per Curiam.*

This case is before the court on appeal from a judgment of the Huron County Court of Common Pleas, Juvenile Division, which allocated responsibilities for the support of Robert S., alleged dependent child. From that judgment, appellant,

the Cuyahoga County Department of Children and Family Services ("CCDCFS"), raises the following assignments of error:

"I. The juvenile court erred in allowing the hearing to determine support obligations to proceed as a cause of action for fraudulent adoption against the CCDCFS. As the juvenile court lacked subject matter jurisdiction to try an action in fraud.

"II. The juvenile court erred when it failed to dismiss appellee[s'] motion to determine support obligations for failure to comply with Juvenile Rule 19.

"III. The juvenile court erred in failing to dismiss appellees' motion for failure to plead fraud with particularity, in violation of Civil Rule 9(B).

"IV. Assuming, arguendo, the juvenile court was empowered to hear an action in fraud, the court erred in not dismissing the action as no court may entertain an action regarding an adoption decree based on fraud or contract after one year.

"V. The judgment of the juvenile court was against the manifest weight of the evidence as appellees failed to prove the necessary elements for fraud with clear and convincing evidence.

"VI. The court erred in determining that appellant was contractually bound to pay for Robert's residential treatment.

"VII. The juvenile court committed reversible error when it admitted into evidence Exhibits 4, 5, 6, 8, 9 and 10 for which no foundation had been laid, and which contained hearsay with [*sic*] hearsay."

Robert S. was born on November 18, 1980 to a seventeen-year-old mother who had a history of mental illness and drug and alcohol abuse problems. At approximately two years of age, Robert was removed from the home of his alleged paternal grandmother in Cuyahoga County after he was found in a crib with his dead infant sister. Robert subsequently became a permanent custody ward of Cuyahoga County and was placed in a foster home until 1987. During the four years in which he lived with the foster family, the family reported that Robert exhibited increasingly destructive behavior. As a result, during this time period, Robert was subjected to psychological evaluations which revealed his deep-seated emotional, suicidal and homicidal feelings. It was further recommended in an evaluation by Dr. Johanna Wilcott, dated March 10, 1986, that Robert's emotional problems made it unlikely that he would be able to adjust to an adoptive home at that time. Appellant therefore removed Robert from the foster home and placed him in the Berea Children's Home, a residential treatment facility which appellant uses for the care of children of which appellant has permanent custody.

In the summer of 1987, appellees, Dennis and Rebecca S., residents of Huron County, Ohio, contacted the Berea Children's Home, as they were looking to adopt a child. They indicated that they would accept a child with mild learning disabilities but not one with substantial special needs. Berea informed appellees that they had a child who had been improperly placed there and who did not need residential treatment. Thereafter, in September 1987, appellees became involved in Berea's specialized foster-to-adopt program and Berea introduced appellees to Robert. Appellees then began a visitation program with Robert and in December 1987, the CCDCFS placed physical custody of Robert with appellees.

On July 17, 1989, appellees adopted Robert. During the time that he had been living with appellees, but prior to the adoption, Robert was having difficulty bonding with appellees. Therefore, in April 1989, appellees requested a psychological evaluation of Robert. Dr. Straud of the Berea Children's Home conducted that evaluation and told appellees that Robert had an above average IQ, that he wanted to be in control but that appellees had been doing a beautiful job with him and that if they continued to do what they had been doing, Robert would grow up to be a child that they would love, admire and be proud of. Also during this pre-adoption phase, Dawn Anderson from the CCDCFS visited appellees' home and discussed the adoption process with them. Anderson explained that because Robert was a special-needs child, appellees qualified for the subsidized adoption program to cover the cost of therapy for Robert. In a letter dated June 29, 1989, Anderson wrote appellees as follows:

"Enclosed are the forms for subsidy for Bobby. * * * More importantly are Bobby's special needs. As you can see, I currently wrote only those special needs which Bobby has now. Those being: therapy-out-patient and allergy treatment. * * * Remember, the subsidy can be added to if necessary, as we spoke of, so that if Bobby needed in-patient hospitalization for behavior or substance abuse, that need could be added when the situation arose. All that would be needed would be documentation and a phone call to Dottie Klemm."

Subsequently, the Agreement for Subsidized Adoption was entered into between appellant and appellees. That agreement, consistent with the above-quoted letter, covered payments only for "out-patient therapy as needed (agency rate); treatment, assessment, and medication for allergic rhinitis and/or allergies."

After the adoption was finalized, appellees had increasingly severe problems with Robert, including disruptive behavior in school, head banging at night, theft, lying, and violent behavior toward appellees' newly adopted baby boy. In the fall of 1989, appellees asked Anderson for more information about Robert's family history. In response, they received materials from Anderson and a folder, known as Robert's "life book," from Berea Children's Home. Together, these materials

contained numerous reports concerning Robert which revealed deep-seated psychological problems which were initially recognized when Robert was approximately three years old. The trial court below noted the following significant facts which were known to appellant but never disclosed to appellees prior to their adoption of Robert:

"a. Robert was first administered a psychological evaluation in 1984, at the age of 3½ years, where Dr. Wilcott concluded that he suffered from 'serious emotional problems.'

"b. Robert was re-evaluated by Dr. Johann [sic] Wilcott March 10, 1986, who concluded that his 'emotional problems make it unlikely that he will be able to adjust to an adoptive home' at this time.

"c. A report of D. Spisak, the child's assigned social worker from CCDCFS, of May 16, 1986, regarding removal of Robert from the * * * foster home 'because of the nature and deep seatedness of Bobby's problems, the homicidal and suicidal feelings and the potential for regression with therapy.'

"d. Special Treatment Conference Summary concerning Robert July 30, 1987, which concluded that his 'most pronounced behavior problem is sexual acting out' and concerns 'about Bobby's lack of ability to bond with both peers and adult [sic].'

"e. Diagnostic Conference Summary concerning Robert April 29, 1987, noting problems, including 'morbid fantasy, fire obsession, obsession with knives, self-injury and inability to separate reality from fantasy.' Bobby was tested for adoption appropriateness and found to have several problems (those noted above) preventing his readiness."

In the fall of 1991, appellees enlisted the services of Dr. Shari Orhinger, a child psychiatrist. Orhinger treated Robert for nine months. Robert's behavior, however, did not improve and was tearing appellees' family apart. Moreover, despite appellees' numerous attempts to contact the CCDCFS for assistance, the CCDCFS ignored appellees' phone calls and failed to provide assistance or advice. Therefore, with the approval of Dr. Orhinger, Robert went to Pennsylvania for the summer of 1992 to stay with friends of appellees who had experience being foster parents to special-needs children. Appellees believed that the change of scene might be beneficial to Robert. In September 1992, however, the Pennsylvania couple called appellees, said that they could no longer tolerate Robert's behavior, and stated that he needed to be removed from their home immediately. Thereafter, upon Dr. Orhinger's recommendation, appellees placed Robert in the Ohio State University's psychiatric ward for children for a complete psychological evaluation.

On October 8, 1992, appellees filed a complaint in the lower court alleging Robert to be a dependent child due to his psychological condition and requesting that appellee, the Huron County Department of Human Services ("HCDHS"), assume Robert's guardianship. Appellees also filed a motion to join the CCDCFS as a necessary party. Thereafter, the lower court entered a judgment finding Robert to be dependent by clear and convincing evidence. The court also ordered the court clerk to issue a subpoena to the CCDCFS for all records in their possession pertaining to Robert. On November 20, 1992, the court entered a judgment finding the motion to join well taken and ordering the CCDCFS to be made a party to the action. Subsequently, the court ordered that Robert remain in the custody of HCDHS for placement at Boys Village, a residential treatment facility. In response, the HCDHS filed, on September 27, 1993, a motion to determine the support obligations of the parties. Throughout these proceedings, the court had continually ordered appellees to pay support for Robert and to provide health and hospital insurance coverage and to be responsible for all necessary medical, dental and optical expenses. On December 3 and 4, 1993, a hearing on the motion to determine support obligations was conducted after which the parties filed written arguments on the matter. On February 3, 1994, the trial court entered the judgment which is now before this court on appeal. In particular, the court determined that significant facts about Robert's background were known to the CCDCFS but not disclosed to appellees prior to their adoption of Robert, that the CCDCFS ignored appellees' requests for assistance and advice, and that the CCDCFS should have disclosed to appellees all the information in its files regarding Robert's emotional problems and abnormal behavior prior to the adoption. The court then concluded:

"Based both upon the contractual obligations assumed by CCDCFS and the fraudulent misrepresentations made by its agents prior to the adoption, the Court finds that CCDCFS should be responsible for reimbursement to Huron County Department of Human Services and Dennis and Rebecca S. * * * for all costs of care and treatment for Robert S. * * * to date with a current arrearage of $45,569.50 having accumulated to the Huron County Department of Human Services as of September 30, 1993, and that CCDCFS be responsible for all further expenses of care and treatment of Robert S. * * * during his placement in the temporary custody of the Huron County Department of Human Services at Boys Village in Smithville, Ohio, until further order of this court."

Because the first, third, fourth and fifth assignments of error each address appellant's allegation that the trial court erred in concluding that appellant fraudulently misrepresented Robert's emotional and psychological problems prior to the adoption, we will discuss them together. Appellant's arguments under these assignments of error are all based on its assertion that the trial court

allowed the action below to proceed as an action for fraudulent adoption. Appellant contends that the lower court lacked subject matter jurisdiction to try an action in fraud, that appellees failed to plead fraud with particularity in violation of Civ.R. 9(B), that under R.C. 3107.16(B) upon the expiration of one year after an adoption decree is entered, no court may entertain an action attacking the adoption decree in any manner, and that the court's finding of fraud was against the manifest weight of the evidence, as appellees failed to prove the necessary elements of fraud by clear and convincing evidence.

Upon a review of the record in this case, we find none of these assignments of error well taken. Although the trial court did find that the CCDCFS fraudulently misrepresented Robert's condition prior to the adoption, the trial court did not entertain an *action* for fraudulent misrepresentation or entertain an action attacking the validity of the adoption decree. See *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101 (in a cause of action for the tort of "wrongful adoption," plaintiffs must bring the action within four years of the time the cause accrued and must plead and prove the elements of the tort of fraud). The court did entertain a motion to determine the support obligations of the parties to a dependency action. Previously, the court granted a motion making the CCDCFS a necessary party to the action and the CCDCFS did not object. R.C. 2151.23(A)(11) and (B)(4) grant the juvenile court jurisdiction to hear and determine requests and applications for the support of children. Moreover, R.C. 2151.36 authorizes the juvenile court to " * * * make an examination regarding the income of the parents, guardian, or person charged with the child's support, and may then order that the parent, guardian, or person pay for the care, maintenance, and education of the child and for expenses involved in providing * * * special care of, the child."

Under Juv.R. 2(AA), "person" includes " * * * the state or any of its political subdivisions, departments, or agencies." Accordingly, the trial court's order of support was in compliance with the Revised Code and the Juvenile Rules and was not an order in an action in fraud. Therefore, the first, third, fourth and fifth assignments of error are not well taken.

■ In its second assignment of error, appellant contends that the trial court erred in denying appellant's motion to dismiss for failure to comply with Juv.R. 19. That motion to dismiss was made at the beginning of the hearing on December 3, 1993. At that time, appellant orally asserted that the proceedings on the motion to determine the support obligations of the parties should be dismissed because the HCDHS had failed, in its motion to determine the support obligations, to specify the grounds upon which the CCDCFS could be ordered to contribute to the support of Robert. Upon consideration, the trial court concluded that appellant had ample notice of the grounds asserted by the HCDHS and

found that despite earlier opportunities to raise the issue, appellant had failed to do so. The court therefore denied the motion.

■ Juv.R. 19 provides in relevant part:

"An application to the court for an order shall be by motion. A motion other than one made during trial or hearing shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority and may be supported by an affidavit."

As the Court of Appeals for Cuyahoga County has stated: "The rules governing the filing and service of motions in the juvenile court are designed to safeguard the due process rights of all the litigants by creating an orderly procedure to ensure adequate notice to all interested persons." *In the Matter of Rose* (May 21, 1992), Cuyahoga App. No. 62493, unreported, 1992 WL 110289. In the present case, the trial court, in a judgment entry of September 13, 1993, ordered the prosecutor's office to submit a proposed judgment entry and supporting affidavits to the court with recommendations for what financial responsibility the CCDCFS should bear for reimbursing HCDHS for the past and future treatment of Robert. In response, the HCDHS filed its motion to determine the support obligations of the parties. The HCDHS did not, however, file supporting affidavits or a memorandum. Nevertheless, appellant did not object and the case initially went before the court for a hearing on the matter on October 6, 1993. While there is no transcript of that proceeding before this court, the transcript of the December hearing does refer to the October hearing. From the transcript that is before this court, it is clear that as early as the October 6 hearing, appellant was well aware of the issues to be raised before the court. Moreover, at the October 6 hearing, the court granted appellant a continuance to give it more time to prepare. Never, during any of these proceedings prior to the December hearing, did appellant object to the matter before the court.

Upon consideration of the matters set forth above, we conclude that the HCDHS substantially complied with the requirements of Juv.R. 19 and that appellant was given adequate notice of the matters to be raised at the December hearing. Accordingly, the second assignment of error is not well taken.

In its sixth assignment of error, appellant asserts that the trial court erred in determining that appellant was contractually bound to pay for Robert's residential treatment. Appellant contends that the only agreement between the parties is the Agreement for Subsidized Adoption and that under the terms of that contract, appellant is required to pay only for Robert's outpatient therapy and allergy treatments and medication. Further, appellant argues that the letter of

June 29, 1989 was not incorporated into the subsidized adoption agreement and that even under the terms of that letter, appellant is not required to subsidize residential treatment for Robert.

 The court below concluded that the terms of the letter of June 29, 1989 (as quoted *supra* ) were incorporated into the subsidized adoption agreement by the representations of the agents of appellant. However, the Supreme Court of Ohio has held, in keeping with long-established principles of contract law, that:

"Where the parties following negotiation make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus.

Nothing in the subsidized adoption agreement before this court could be read to obligate appellant to pay for inpatient care of Robert. We do find, however, that under the assertions made by appellant in the letter of June 29, 1989, appellant should be estopped from denying payment for Robert's inpatient care. In *Talley v. Teamsters Local No. 377* (1976), 48 Ohio St.2d 142, 146, 2 O.O.3d 297, 299–300, 357 N.E.2d 44, 47, the Supreme Court of Ohio adopted the following rule concerning promissory estoppel:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Under the language of the letter at issue, an agent of appellant clearly led appellees to believe that if Robert needed any kind of inpatient care for behavior problems in the future, all appellees needed to do would be to telephone a woman named Dottie Klemm and additional funds for such coverage would be forthcoming. Appellant contends that inpatient hospitalization and residential care are two different types of treatment and that any additional subsidy could only cover hospitalization. Nancy Simon, the supervisor of permanent custody units and adoption at CCDCFS, testified at the hearing below that hospitalization is of a shorter duration than residential treatment. That difference, however, is clearly not explained in the letter of June 29, 1989. Moreover, appellee Rebecca S. testified at the hearing below that based on Dawn Anderson's explanation, her understanding was, "should anything else develop we were concerned about potential drug abuse because of the mother having been a drug user should he need *any kind of extensive treatment* that the subsidy would cover that."

Based on the evidence presented at the hearing below, it is evident that prior to his adoption, appellant was well aware of the severe emotional and behavioral

problems that Robert exhibited. Nevertheless, the agency failed to fully inform the adoptive parents of these problems and assured them that they could receive increased subsidies in the future should Robert need inpatient care. Based on these assertions, appellees followed through with the adoption. Under these circumstances, we conclude that appellant should be estopped from now denying coverage for Robert's inpatient care. Accordingly, the sixth assignment of error is not well taken.

Finally, in its seventh assignment of error, appellant challenges the trial court's admission into evidence of exhibits four, five, six, eight, nine, and ten. Appellant contends that these exhibits, which were records concerning Robert that had been in the possession of appellant and the Berea Children's Home prior to the adoption, were inadmissible because the HCDHS failed to lay an adequate foundation for their admission and because they contained hearsay within hearsay.

The records at issue are reports on Robert covering his background and behavior problems at various stages of his life prior to the adoption. At the hearing below, the trial court admitted the exhibits into evidence because it concluded that at the hearing of October 6, 1993, appellant's previous counsel had stipulated to their foundation or authenticity and because they fell under the business records exception to the hearsay rule. As to the foundation argument, appellant now contends that the trial court was mistaken as to earlier counsel's stipulation, and quotes a discussion between the court and counsel from that earlier hearing. The transcript of that hearing, however, is not before this court. Under App.R. 9, it is the appellant's responsibility to assure that the proper record is before the court on appeal. Absent an adequate record, we are unable to evaluate the merits of this argument and a presumption of validity attends the trial court's action. *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 314, 549 N.E.2d 1237, 1238–1239. Accordingly, we must assume that appellant's prior counsel stipulated to the foundation for the subject records.

In addition, appellant argues that the records were inadmissible because they contained hearsay and hearsay within hearsay. At the hearing below, the court admitted the records under the business records exception to the hearsay rule. Evid.R. 803(6). In our view, however, the records in question were admissible because they were not introduced to prove the truth of the matter asserted. Evid.R. 801(C) defines "hearsay" as " * * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The records in question were not admitted to prove that Robert had severe emotional and behavioral problems. Rather, they were admitted to establish that information about Robert was known to appellant prior to the adoption but was kept from appellees.

Accordingly, the trial court did not abuse its discretion in admitting the subject records into evidence, and the seventh assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal assessed to appellant.

*Judgment affirmed.*

HANDWORK, GLASSER and SHERCK, JJ., concur.