45 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 The LICENSEE TRUST, Appellant,
v.
v.
ARBY'S INCORPORATED, Plaintiff-Appellee,
B. W. STREETER, INCORPORATED; Bernard W. Streeter; Winston
B. Streeter; Trevor B. Streeter, Defendants.
Arby's Incorporated, Plaintiff-Appellee,
v.
B. W. STREETER, INCORPORATED; Bernard W. Streeter; Winston
B. Streeter; Trevor B. Streeter, Defendants-Appellants.
 Nos. 93-2489, 94-1130.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 8, 1994.
Decided: Jan. 24, 1995.
 
 ARGUED: Dov Apfel, HOFFMAN, APFEL, LYONS & LEVINE, P.C., Rockville, MD, for Appellants. Thomas William Queen, WILEY, REIN & FIELDING, Washington, DC, for Appellee. ON BRIEF: Michael L. Sturm, Jennifer L. Radner, WILEY, REIN & FIELDING, Washington, DC, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and RUSSELL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This case requires us to consider whether appellant B.W. Streeter, Inc. ("BWS"), a licensee of appellee Arby's, Inc., infringed Arby's trademark when, following expiration of its lease, it transferred an existing, site-specific license to a new location and began to operate a new restaurant using Arby's trademarks. The district court correctly concluded that the license agreement did not permit transfer of an existing license when the original licensed premises were rendered unusable based on expiration of a lease term to which the licensee voluntarily agreed. Accordingly, we affirm the district court's order enjoining BWS from using Arby's trademarks until such time as BWS has executed a new license agreement.
 
 I.
 
 2
 In July 1993, Arby's, Inc., an Ohio corporation, brought this action against B.W. Streeter, Inc. ("BWS"), a Maryland corporation with its principal place of business in Fairfax, Virginia, alleging trademark infringement and unfair competition. Arby's complained that BWS was unlawfully using the Arby's trademarks at a fast food restaurant located in the Tyson's Corner Center Mall in McLean, Virginia, in violation of the Lanham Act, 15 U.S.C. Secs. 1051, et seq.
 
 
 3
 Arby's operates a national system of fast-food restaurants serving roast beef sandwiches; some of these restaurants are company-owned while others are owned and operated by Arby's licensees. In connection with operation of the restaurants, Arby's owns several registered trademarks and service marks, which licensees are authorized to use within certain specified territories.
 
 
 4
 In 1976, BWS and Arby's entered a license agreement ("the 1% License Agreement") authorizing BWS to operate Arby's restaurant # 613 at 8113 Leesburg Pike, Vienna, Virginia. The agreement was perpetual but site-specific. The 1% License Agreement is subject to a 1975 Addendum, p 10:8 of which gives licensees the right to transfer the license to a new location in four situations:
 
 
 5
 Notwithstanding any other provisions herein to the contrary, LICENSEE shall have the right to transfer the License herein granted from the Licensed Premises to a new location in the event the Licensed Premises shall be rendered inoperable by any casualty, or the Licensed Premises shall be taken in condemnation or by eminent domain, or the principal highway access to the Licensed Premises shall be terminated or so changed as to substantially reduce access to the Licensed Premises, or if the Licensed Premises can no longer be used for the operation of the Licensed Business for reasons beyond the control of LICENSEE, provided LICENSEE promptly notifies ARBY'S of the occurrence of any of the foregoing events, LICENSEE obtains a new location for the Licensed Business within twelve (12) months of such occurrence, and such new location is approved in advance by ARBY'S.
 
 
 6
 BWS operated unit # 613 at the Leesburg Pike location until the sublease it had negotiated for that property expired on September 29, 1990. In 1987 and again in 1989, BWS had requested from its sublessor, Hardee's, an extension of the lease term in return for an increase in the rent, and had offered in the alternative to purchase the property.
 
 
 7
 Hardee's refused. Following expiration of the lease, BWS notified Arby's that it could not extend the lease term and sought approval to relocate the unit to the Tyson's Corner Center Mall. By letter dated March 29, 1991, Arby's confirmed that unit # 613 could be transferred to Tyson's Corner. The letter advised BWS that a new license agreement would be required: "Please note that you will be required to execute a new Franchise Agreement.... No unit will be allowed to open without a fully executed License Agreement " (emphasis in original).
 
 
 8
 The new restaurant opened on October 1, 1991, although BWS had not executed a new license agreement as of that date. By letter of November 18, 1991, Arby's requested that BWS sign a new license agreement for the recently opened Tyson's Corner unit. BWS responded, in a letter dated March 2, 1992, that the 1975 Addendum authorized transfer of the existing license and use of Arby's trademarks at the new site, because termination of the lease for the original premises was "beyond its control." Arby's replied that expiration of a lease term to which the licensee had agreed was not "beyond the control of Licensee" but rather amounted to a "voluntary" transfer under policies then in effect. When BWS failed to execute a new 20-year license agreement, Arby's informed BWS, by letter of December 15, 1992, that the Tyson's Corner restaurant was "being operated in an unlicensed status, in violation of Arby's trademark rights." Arby's filed this action on July 8, 1993.
 
 
 9
 BWS filed an answer and counterclaims alleging that the transfer was authorized by the terms of the 1% License Agreement and the 1975 Addendum; BWS also argued that Arby's claims were barred by laches and estoppel. In its counterclaims, BWS sought a declaratory judgment construing the 1975 Addendum to mean that a licensee is free to relocate an Arby's unit and transfer the 1% License Agreement to the new location when a landlord refuses to extend the term of a lease. In support of its claims, BWS submitted various affidavits allegedly demonstrating the parties' intent that the license be transferrable upon the expiration of a lease.
 
 
 10
 Based on their varying interpretations of the License Agreement, both parties moved for summary judgment. In a December 1993 opinion, the district court held that the language of the 1975 Addendum, which was unambiguous and thus prohibited reference to parol evi dence under Ohio law,[1] plainly did not include expiration of a lease term to which a licensee voluntarily agreed within the meaning of the phrase "reasons beyond the control of Licensee." The court accordingly granted summary judgment in favor of Arby's. Following a December 17, 1993, hearing, the district court granted Arby's request for a permanent injunction and denied BWS's motion for reconsideration. BWS appeals.
 
 II.
 
 11
 BWS contends that its transfer of the existing license to the Tyson's Corner location was authorized by the Addendum, in that expiration of its lease for the Leesburg Pike premises was "beyond its control." BWS points specifically to its offer to increase the rental payments or to purchase the property and the sublessor's refusal under any circumstances to extend the term of the lease. Reference to parol evidence, BWS urges, clarifies the meaning of the phrase "beyond the control of Licensee" and reveals that the parties intended a licensee's inability to negotiate an extension of a lease to fall within that provision.
 
 
 12
 We disagree. The district court correctly concluded that Ohio law prohibits reference to parol evidence to vary the plain meaning of the Addendum. See, e.g., Aultman Hosp. Ass'n v. Community Mut. Ins. Co., 544 N.E.2d 920, 923 (Ohio 1989). The district court found that the language of the Addendum was clear and unambiguous, and we cannot conclude otherwise. The Addendum enumerates four circumstances in which a licensee may transfer an existing license to a new location; the expiration of a lease term is not among them. As the district court noted, had the parties desired to permit transfer of an existing license upon expiration of a lease, surely they could have included language to that effect. Under Ohio law, "[t]he total absence of a provision from a written contract is evidence of an intention of the parties to exclude it rather than of an intention to include it." Buckeye Union Ins. Co. v. Consol. Stores Corp., 587 N.E.2d 391, 395 (Ohio Ct.App.1990).
 
 
 13
 Moreover, expiration of a specific lease term to which a licensee agreed is not, as a factual matter, an event beyond the licensee's control and as such does not fall within the plain language of p 10:8 of the Addendum. When BWS executed an 18-year sublease for the Leesburg Pike premises in 1972, it took the chance that the lease would not be renewed at the expiration of that term. BWS cannot now seek to bring its relocation within the four circum stances listed in the Addendum simply because the Leesburg Pike lease expired pursuant to its terms.
 
 
 14
 Finally, the provision for transfer of a license necessitated by an event beyond the control of a licensee must be interpreted in light of other events permitting transfer specified in the Addendum. See, e.g., Direct Carpet Mills Outlet of Columbus, Inc. v. Amalgamated Realty Co., 1988 Ohio App. LEXIS 3349 at * 6-7 (1988) ("All provisions of a contract must be construed together to determine the meaning and intention of any particular clause or provision therein."). Expiration of a lease term to which a licensee agreed is of a different character altogether than casualty, condemnation or eminent domain, or elimination of the principal highway access to the licensed premises, all of which can more truly be said to be "beyond the control of" a licensee.
 
 III.
 
 15
 BWS also contends that Arby's claims should be barred by laches and estoppel. In a memorandum in support of its October 1993 motion for summary judgment, BWS noted that Arby's did not bring suit until July 1993, more than 21 months after the restaurant began operating in Tyson's Corner. Because the disposition of the defenses of laches and estoppel requires a close scrutiny of the facts, BWS argues, the district court should not have granted summary judgment in favor of Arby's.
 
 
 16
 We cannot agree. It is plain from the record that Arby's advised BWS months before the Tyson's Corner restaurant opened that a new license agreement for that location would be required and repeatedly reminded BWS of the necessity of executing such an agreement in subsequent correspondence. In the intervening months, the parties attempted to settle this dispute without resorting to litigation, although BWS was fully aware of Arby's intent to file suit should no resolution be reached. In these circumstances, the defenses of laches and estoppel are unavailable.[2]
 
 IV.
 
 17
 Finally, BWS and The Licensee Trust appeal the district court's refusal to allow The Licensee Trust to intervene as a counter-plaintiff and its denial of a motion for class certification. The Licensee Trust is an unincorporated association of Arby's licensees formed in 1975 for the purpose of supporting and representing the interests of the licensees. On October 8, 1993, BWS and The Licensee Trust moved alternatively for an order allowing The Licensee Trust to intervene pursuant to Fed.R.Civ.P. 24 or for certification of a class with The Licensee Trust as class representative pursuant to Fed.R.Civ.P. 23. Following a hearing, the court denied both motions, noting from the bench that:
 
 
 18
 I just don't find any commonal[i]ty of interests here that would justify any kind of class certification. Nor do I find any justification to allow an intervention. This is simply a dispute between the plaintiff and one of its licensees. And there is just no indication that there is any difficulty or any problem with any of the [other licensees].
 
 
 19
 The district court did not abuse its broad discretion in denying leave to intervene and refusing to certify a class of licensees. We thus affirm its order denying the motions.
 
 V.
 
 20
 For the foregoing reasons, the judgment of the district court is hereby
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Paragraph 15:2 of the License Agreement provides that the agreement is to be governed, construed, and interpreted in accordance with Ohio law
 
 
 [2]
 We likewise reject BWS's suggestion that the district court should have required Arby's to offer BWS the 20-year license agreement BWS had earlier rejected. The district court properly decided the question before it--whether BWS's operation of the Tyson's Corner unit was infringing Arby's trademarks--and declined to grant relief not sought by the parties