OPINION
Plaintiff, Hill Farms Limited Partnership, brought this action asserting claims sounding in contract against the defendant, John J. Sugar, related to the care and breeding of a standard bred racehorse which the parties co-own. The respective rights and obligations of the parties are set forth in the following two contracts.
The plaintiff and defendant entered into their first written agreement on August 16, 1994. At that time, defendant purchased from the plaintiff a one-half interest in a standard bred stallion named Cam's Magic Trick ("Magic Trick"). Defendant paid $225,000 for this interest, and was accorded the following preferential treatment regarding the receipt of revenue.
First, defendant received full legal ownership to secure receipt of at least $250,000 in revenue received from the breeding of Magic Trick. After this threshold had been reached, defendant agreed to transfer fifty percent ownership back to the plaintiff. Second, the plaintiff agreed to be responsible for the management and maintenance of Magic Trick during its breeding career. Finally, the parties devised a complicated payment scheme which they set forth in the eighth paragraph of their August 16, 1994 agreement. That paragraph of the contract provides:
 8. Sugar shall be paid the first One Hundred Twenty-five Thousand Dollars ($125,000) of revenue derived from Cam's Magic Trick received prior to December 31, 1996. Payment shall be made by the fifteenth (15th) day of each month for the revenues received during the preceding month. After One Hundred Twenty-five Thousand Dollars ($125,000) has been paid to Sugar, Hill Farms shall receive the next One Hundred Twenty-five Thousand Dollars ($125,000) of revenue derived from Cam's Magic Trick prior to December 31, 1996. Payment shall be made on the fifteenth (15th) day of each month for the revenues received in the preceding month. After Sugar and Hill Farms have each been paid One Hundred Twenty-five Thousand Dollars ($125,000) pursuant to these provisions, thereafter all revenues received prior to December 31, 1996 shall be divided equally between Hill Farms and Sugar. From and after January 1, 1997, all revenues derived from Cam's Magic Trick shall be paid to Sugar until Sugar has been paid: (i) the difference, if any (and if a positive number), derived from subtracting from One Hundred Twenty-five Thousand Dollars ($125,000) all amounts paid to Sugar prior to January 1, 1997, plus (ii) One Hundred Twenty-five Thousand Dollars ($125,000). Thereafter, all such revenues prior to December 31, 1997, shall belong to Hill Farms until Hill Farms has received, after January 1, 1997, One Hundred Twenty-five Thousand Dollars ($125,000), and all other revenues shall be divided equally between Hill Farms and Sugar. Revenue from Cam's Magic Trick for purposes of this paragraph means gross revenues derived form the ownership of Cam's Magic Trick including without limitation stud fees, breeding fees and proceeds of sale.
On October 21, 1996, the parties executed a second contract whereby the plaintiff relinquished the care and management of Magic Trick to Midland Acres Farm ("Midland"), who assumed these duties in exchange for the payment of forty percent of the gross breeding revenue. However, the parties have been unable to agree upon the distribution of the remaining proceeds, or the responsibility for what the parties characterize as the "expenses attributable to ownership."
According to the plaintiff, it is entitled to receive fifty percent of the net revenue produced by Magic Trick, i.e., fifty percent of the gross revenue less the payment of forty percent to Midland. In other words, plaintiff maintains that both parties are obligated to share expenses equally and, thereafter, are entitled to share equally in profit. On the other hand, the defendant argues that he is entitled to receive fifty percent of the gross revenue, and that the plaintiff is solely responsible for the expenses associated with maintaining and managing Magic Trick. Under the defendant's calculation, plaintiff is entitled to receive ten percent of the revenue, or fifty percent of the gross revenue less forty percent payable to Midland.
Unable to reach an agreement, plaintiff filed this action seeking a declaration of the parties' rights and responsibilities. The defendant answered and filed a counterclaim, and thereafter, both parties moved for summary judgment. Both motions were briefed and argued before the trial court, which rendered a decision granting summary judgment in favor of the plaintiff, and against the defendant. Defendant now appeals, raising the following two assignments of error:
 [1.] The trial court erred when it granted appellee's motion for partial summary judgment.
 [2.] The trial court erred when it denied appellant's motion for partial summary judgment.
On appeal, we are asked to determine whether the trial court correctly entered summary judgment in favor of the plaintiff and against the defendant. In doing so, we apply the same standard applied by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102. That standard is contained in Civ.R. 56(C), which provides:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
Below and on appeal, both parties agree: (1) that the terms of the first and second written agreements are plain and unambiguous; (2) that resort to parole evidence is unnecessary and inappropriate; (3) that this matter presents a simple, straightforward question of contract interpretation; and (4) that there is no impediment to summary judgment.
The heart of this dispute is centered upon the parties' inability to agree whether the defendant must share the expense associated with the keeping of Magic Trick, or whether the plaintiff remains wholly responsible for those costs. Having examined the two contracts, we find that the answer to this dispute lies in the third paragraph of the first agreement. That paragraph provides:
 3. Hill Farms shall act as the manager of Cam's Magic Trick for the benefit of the owners of Cam's Magic Trick. Hill Farms shall employ care and diligence in the management and maintenance of Cam's Magic Trick and shall not be responsible or liable for any injury, disease or death of Cam's Magic Trick except in the case of Hill Farms' own willful misconduct or gross negligence. Hill Farms shall be responsible for all expenses attributable to ownership of Cam's Magic Trick and the performance of its duties pursuant to this Agreement, including without limitation, boarding, advertising, general care, blacksmithing, ordinary veterinary expenses and grooming. * * *
In an attempt to unseat the defendant's reliance upon this contractual provision, plaintiff argues that the defendant "simply refuses to acknowledge the modification of paragraph 8 of the original agreement affected by his subsequent agreements with Hill Farms and Midland Acres." (Plaintiff's brief at 11.) Specifically, plaintiff argues that it is responsible for expenses only "during such times as it was managing the horse." Indeed, plaintiff sets forth this exact language in its appellate brief in bold, underlined type. However, this language simply does not exist in either of the parties' agreements.
Plaintiff also argues that the agreement to evenly share revenue also demonstrates their intent to share expenses. However, this intent is conspicuously absent from the four corners of both contracts. The parties were obviously capable of drafting an agreement with complicated payment terms, and could have, if they had so desired, provided for a shifting of expenses. However, they did not.
When construing any written agreement, a court's primary objective is to ascertain and give effect to the intent of the parties as manifest in the language that they chose to employ. So long as contractual terms are clear, a court need not go beyond the plain language of the agreement to determine the rights and responsibilities of the contracting parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,53.
Although the first contract provides that the plaintiff is entitled to a distribution of fifty percent of gross revenue, it also clearly and unambiguously provides that the plaintiff is responsible for all of the expenses "attributable to ownership" of Magic Trick. Plaintiff's belief that the terms of the second agreement provide otherwise flies in the face of that agreement, which provides that it "in no way shall be deemed to be a waiver of any rights either party may have under the [first] Agreement."
For the foregoing reasons, both of defendant's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to enter summary judgment in favor of the defendant and against the plaintiff. Finally, the trial court is instructed to hold an evidentiary hearing or examination in order to determine what monies are past due under the provisions of the parties' contracts.
 ______________________ PETREE, J.
BROWN and TYACK, JJ., concur.