DECISION
{¶ 1} Plaintiffs-appellants, The Charles W. Broeman Company, Dwight W. Broeman, and Betty B. Klinedinst (collectively "Broeman"), appeal the trial court's grant of summary judgment in favor of defendant-appellee Walgreen Company. Broeman claimed that Walgreen had breached its lease with Broeman by failing to pay its full rent after Walgreen closed its store. Because a plain reading of the lease reveals that Walgreen was not obligated to pay all that Broeman claimed, we affirm.
 {¶ 2} In July 1982, Walgreen leased real estate from Broeman for a Walgreen drug store. The term began on November 1, 1982, and was to continue until October 31, 2017, subject to prior termination as provided in the lease.
 {¶ 3} According to Article 2 of the lease, Walgreen agreed to pay a fixed rent of $7,620 per month, plus an annual percentage rent calculated on a sliding scale based on a percentage of gross sales at the Walgreen store.
 {¶ 4} At the end of February 2001, Walgreen ceased operation of the store. In June 2001, Walgreen notified Broeman that Walgreen was electing to exercise its option to cancel the lease effective December 31, 2002. From the time Walgreen closed the store until the termination of the lease, Walgreen never sublet the premises.
 {¶ 5} Broeman claims that, for the two years before the lease was cancelled, Walgreen did not pay the entire rent that was due. For those two years, Walgreen apparently only paid the fixed portion of the rent. While the percentage part of the rent calculated from Walgreen's sales receipts would obviously have been zero once the store closed, Broeman contends that, once the store closed, a different article of the lease applied to calculate the rent.
 {¶ 6} Article 15(c) of the lease reads as follows: "At any time and from time to time, Tenant may discontinue the operation of its store in the leased premises. In such event, Tenant maysublet all or parts of the leased premises to any persons, firms or corporations, other than a corporation described in Section (a) hereof, and other than a non-retail use, a bowling alley, a theatre, a movie house, a pool hall or a game room, for any lawful purpose not in violation of any then existing exclusive use restrictions theretofore granted by Landlord to any other tenant in said Shopping Center. In such case Tenant shall pay to Landlord as annual rent for the leased premises for the remainder of the term hereof, in lieu of both the fixed and additional percentage rents provided in Article 2, a fixed amount equal to the fixed and additional percentage rents paid by Tenantduring the lease year immediately preceding such subletting; such amount to be payable in equal monthly installments in advance on the first day of each and every month." (Emphasis added.)
 {¶ 7} Broeman argues that Article 15(c) should have applied once Walgreen closed its store and that the additional rent Walgreen owed should have been calculated from the previous year's rent payments. According to Broeman, the calculation method of Article 15(c) was applicable either if Walgreen discontinued the store or if it sublet the premises.
 {¶ 8} Walgreen contends that, for Article 15(c) to have applied, Walgreen would have had to both discontinue its storeand sublet the premises. The difference in interpretation results in roughly a $64,000 difference per year in rental payments, totaling $128,000 for the two years.
 {¶ 9} We review a grant of summary judgment de novo.[1]
Walgreen was entitled to prevail on its summary-judgment motion only if (1) there was no genuine issue of material fact; (2) it was entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of the party opposing the motion, and that conclusion was adverse to the party opposing the motion.[2] Summary judgment is particularly appropriate where, as here, the disposition of a case turns on the plain and unambiguous terms of a contract.[3]
 {¶ 10} When a court construes any written instrument, the primary and paramount objective is to ascertain the intent of the parties.[4] "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."[5] Courts must give common words their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.[6] Where a contract is plain and unambiguous, it does not become ambiguous if, in its operation, it may work a hardship upon one of the parties.[7]
 {¶ 11} The third sentence of Article 15(c), which describes the alternative way to calculate rent, begins, "In such case." Admittedly, it is not clear whether the phrase "In such case" refers to the first sentence of Article 15(c), the second sentence, or the combination of both sentences. In other words, it is not clear if the "case" referred to at the beginning of the third sentence is the situation where the tenant discontinues operation of its store, the situation where the tenant subleases the premises, or the situation where the tenant both discontinues its store and subleases the premises. If the paragraph ended there, we would agree that there is an ambiguity.
 {¶ 12} But the remainder of the third sentence clarifies any possible ambiguity. The third sentence states that the alternative rent amount is equal to the rent paid during the lease year immediately preceding "such subletting." The reference to "subletting" reveals that the alternative calculation of rent should be done only when the tenant has subleased the premises. When there is no sublease, as in Walgreen's case, Article 15(c) simply does not apply. Because there is no other provision in the lease for an alternative calculation of rent when there has not been a sublease, the standard Article 2 calculation of rent should apply.
 {¶ 13} Therefore, we conclude that the lease, while poorly drafted, is not ambiguous. The clear language of the lease provides that rent should have been calculated by adding the fixed rent of $7,620 to the percentage of cash receipts from operation of the business and that the alternative rent calculation of Article 15(c) should not have applied unless Walgreen had sublet the premises.
 {¶ 14} Broeman points to the last sentence of Article 15, which states, "Notwithstanding any assignment, reassignment or subletting as above provided, Walgreen Co. shall not be released from liability under this lease." But Walgreen has not argued that it should have been released from all liability under the lease. Rather, it simply argues that its rent payments should have been calculated under Article 2 rather than under Article 15. We agree with Walgreen's interpretation and conclude that Walgreen was not released from all liability when it continued to pay rent calculated according to Article 2.
 {¶ 15} Broeman's final argument is that the trial court erred when it noted that Article 15's caption stated, "Assignment and Subletting." Though the trial court emphasized in its decision that "subletting" appeared in the caption, the trial court's analysis clearly focused on the text of Article 15. The trial court examined the language of the lease and came to the conclusion, as do we, that the lease is unambiguous and that Article 15 did not apply to the rent calculation for Walgreen. Therefore, Broeman's argument is without merit.
 {¶ 16} We conclude that Walgreen met its burden to prevail on its summary-judgment motion. Therefore, we overrule Broeman's assignment of error and affirm the trial court's entry of summary judgment for Walgreen.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] See Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186, 738 N.E.2d 1243.
[2] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[3] See Long Beach Assn., Inc. v. Jones, 82 Ohio St.3d 574,577, 1998-Ohio-186, 697 N.E.2d 208.
[4] See Aultman Hosp. Assn. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920.
[5] See Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth., 78 Ohio St.3d 353, 361,1997-Ohio-202, 678 N.E.2d 519, quoting Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus.
[6] See Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth., supra, citing Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus.
[7] See Aultman Hosp. Assn. v. Community Mut. Ins. Co.,
supra, at 55.