DECISION AND JUDGMENT
{¶ 1} This case concerns a commercial lease of real property and the issue of what rights exist under its terms for the tenant to terminate the lease in the event that a part of the property that is subject to the lease is taken by eminent domain. Appellant, Rite Aid of Ohio, Inc. ("Rite Aid"), is the tenant, and appellee, Monroe/Laskey Limited Partnership ("Monroe/Laskey"), is the landlord of a lease of real property located at 3466 *Page 2 
West Sylvania Avenue in Toledo, Ohio. A portion of the property under the lease was taken by the city of Toledo under eminent domain for use in a road improvement project.
 {¶ 2} Rite Aid appeals a December 31, 2007 judgment of the Lucas County Court of Common Pleas in a declaratory judgment action filed by it to declare its right to terminate the lease. In the judgment, the trial court ruled, on cross motions for summary judgment, that the terms of the lease contract were clear and unambiguous and that the lease did not provide Rite Aid with a right to terminate the lease.
 {¶ 3} Rite Aid appeals the judgment to this court. It asserts two assignments of error on appeal:
 {¶ 4} "Assignment of Error No. 1: The trial court erred in granting Monroe/Laskey's request for summary judgment and denying Rite Aid's cross motion for summary judgment because the premises must include the property.
 {¶ 5} "Assignment of Error No. 2: The trial court erred in granting Monroe/Laskey's request for summary judgment and denying Rite Aid's cross motion for summary judgment because, even though there was no physical possession of the building, a taking merely requires a material or unreasonable interference with a property right."
 {¶ 6} It is undisputed that no portion of the Rite Aid store building at the property was taken through eminent domain. The city of Toledo did take, however, .0861 acres of land from the real property set forth in the legal description contained in Exhibit "A" to the lease. The loss by eminent domain was of a 3,200 square foot strip of land fronting *Page 3 
along Sylvania Avenue. The taking resulted in a loss of 5 of 107 parking spaces. This represents less than a 5 percent loss in parking spaces for the property. The change to the roadway resulted in a limitation to available egress from the site.
 Lease {¶ 7} Article 23 of the lease is entitled "EMINENT DOMAIN." It sets forth terms and conditions under which the lessee can elect to terminate the lease due to eminent domain. It provides in pertinent part:
 {¶ 8} "ARTICLE 23. In the event that the entire Premises shall at any time after execution of this Lease be taken in public or quasi-public use or condemned under eminent domain, then this Lease shall terminate and expire effective the date of such taking and any prepaid rent or unearned charges shall be refunded to Tenant. Tenant shall have the right of termination of this Lease with an appropriate refund of prepaid rent or unearned charges, if, as a result of such eminent domain proceding or other governmental or quasi-public action:
 {¶ 9} "(i) Any portion of the Premises shall be taken and the remaining portion shall be unsuitable for Tenant's continued business operations, determined in Tenants's sole busness judgments; or
 {¶ 10} "(ii) The total number of parking spaces established for the Premises shall be reduced by twenty percent (20%) or more, or Tenant, its customers, agents, employees and visitors are for more than thirty (30) days denied reasonable access to the Premises or parking areas." *Page 4 
 {¶ 11} A key term employed in Article 23 is the word "premises." Article 1 of the lease is entitled "PREMISES" and provides in part:
 {¶ 12} "ARTICLE 1. Landlord does hereby let and lease unto Tenant premises situated in the City of Toledo, County of Lucas, and State of Ohio, and known and described as follows, to wit:
 {¶ 13} "A certain free-standing, one story storeroom (hereinafter known as `Premises') to be constructed at 3450-3466 Sylvania Avenue. A legal description of the real property upon which the Premises are located (hereinafter known as the `Property') is attached hereto as Exhibit `A' and made a part hereof .
 {¶ 14} "The Premises shall have approximately 12,608 square feet of interior space as outlined in red on the plot plan of the Property attached hereto as Exhibit `B' and made a part hereof for the purpose of more specifically locating the Premises.
 {¶ 15} "In determining the square footage of the Premises, measurements shall be from the center of all common walls and the outside of all exterior walls. * * *"
 {¶ 16} Under Assignment of Error No. 1, Rite Aid claims that the trial court misinterpreted the term "premises" in Article 23(i) of the lease to include the Rite Aid store building alone and not to include the property upon which the building is located. The distinction is significant. Article 23(i) expressly provides that the tenant may elect to terminate the lease based upon a taking by eminent domain of any portion of the "premises." It is agreed that no portion of the Rite Aid building, itself, was taken. A portion of the real property upon which the building is located was taken. *Page 5 
 {¶ 17} Rite Aid argues that the term "premises" should be interpreted as including the land upon which the building is located. It claims that limiting the term "premises" to the building is absurd and that Rite Aid has a leasehold interest not only in the building but also the surrounding land. It argues that a premises is a "building along with its grounds," as provided in a definition from Black's Law Dictionary.
 {¶ 18} Appellee, Monroe/Laskey, argues, in response, that the lease is clear and unambiguous in treating the terms "premises" and "property" differently and that the trial court was correct as to the meaning of the terms. Appellee argues further that the lease consistently uses the term "premises" to refer to the building alone and the term "property" to the land upon which the building is located throughout the lease — referring to use of the terms in Article 10, Article 18, Article 25, Article 32, and Article 40 of the lease contract.
 {¶ 19} Looking at the lease as a whole, Monroe/Laskey also argues that Rite Aid's contention that the term "premises" refers to the entire leasehold rather than just the building, if accepted, would make Article 23(ii) meaningless. Article 23(ii) allows for the right to terminate the lease in the event 20 percent or more of the parking spaces are lost through eminent domain. If a right to terminate arises when any portion of the real property is taken, consideration of extent of lost parking spaces would serve no purpose.
 {¶ 20} Monroe/Laskey further argues that the trial court's judgment made no determination that appellant's leasehold interest was limited to the building alone, as contended by Rite Aid. Rather, the issue determined by the trial court on summary *Page 6 
judgment was confined to the right to terminate the lease in the event of eminent domain alone.
 Summary Judgment {¶ 21} This appeal concerns the granting of the motion for summary judgment of Monroe/Laskey and the denial of the motion for summary judgment of Rite Aid. Appellate courts review final judgments granting or denying motions for summary judgment de novo; that is, they apply the same standard for summary judgment as the trial court. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Civ. R. 56(C) provides:
 {¶ 22} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *"
 {¶ 23} Summary judgment is proper where the moving party demonstrates:
 {¶ 24} "* * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed *Page 7 
most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66.
 {¶ 25} Material facts, for purposes of motions for summary judgment, are facts "that would affect the outcome of the suit under the applicable substantive law. Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, 675 N.E.2d 514, 519-520, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510,91 L.Ed.2d 202, 211-212." Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304.
 {¶ 26} Where a motion for summary judgment is made and supported by appropriate evidence showing the absence of a dispute of material fact, the burden shifts to the opposing party to present evidence showing the existence of a genuine issue of fact for trial: "* * * an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ. R. 56(E).
 Contracts {¶ 27} Construction of a written contract is a matter of law and is also reviewed on a de novo basis. Saunders v. Mortensen,101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9; Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, at paragraph one of *Page 8 
syllabus. Contracts are construed to ascertain and give effect to the intent of the parties. Schroeder v. Auto-Owners Ins. Co., 6th Dist. No. L-03-1349, 2004-Ohio-5667, ¶ 24.
 {¶ 28} "We presume that the intent of the parties to a contract is within the language used in the written instrument. Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 241, paragraph one of the syllabus. If we are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract. Aultman Hosp. Assn. v. Community Mut.Ins. Co. (1989), 46 Ohio St.3d 51, 544 N.E.2d 920." Saunders v.Mortensen at ¶ 9. Stated differently, "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." Westfield Ins. Co. v, Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11, citing, Alexander v. Buckeye PipeLine Co.
 {¶ 29} Looking to the language used in the agreement, the meaning of the term "premises" is defined in Article 1 as "[a] certain free-standing, one story storeroom (hereinafter known as `Premises') to be constructed at 3450-3466 Sylvania Avenue." Article 1 defines "Property" as the "real property upon which the Premises are located" as described in the legal description attached to the lease and marked Exhibit "A."
 {¶ 30} It is undisputed that the Rite Aid store was constructed on the real property described in Exhibit "A" to the lease and that the street address for the store building is 3466 Sylvania Avenue. Under Article 1 the contract is unambiguous as to the meaning of *Page 9 
the terms "premises" and "property." The term "premises" is defined as the building alone with the term "property" referring to the land on which it is located.
 {¶ 31} We agree with Monroe/Laskey that the lease agreement maintains the Article 1 distinction between "premises" and "property" throughout the lease, including in Articles 10, 18, 25, 32 and 40. This is significant in that contracts are read as a whole and the intent of each part is gained from a consideration of the whole. Saunders v.Mortensen at ¶ 16; Schroeder v. Auto-Owners Ins. Co. at ¶ 24. Furthermore, we agree with Monroe/Laskey that Article 23(ii) would be rendered meaningless if the term "premises" were treated as referring both to the building and the real property on which it is located.
 {¶ 32} Accordingly, we agree with the trial court in its conclusion that the lease "unambiguously defines the `Premises' as the physical building structure and does not include the real property upon which the building is located." Opinion and Judgment Entry of December 31, 2007. The contract requires no interpretation as to the meaning of the term "premises" as it applies to the Article 23(i) right to terminate the lease in the event of a partial taking by eminent domain. A partial taking of the building is necessary under Article 23(i) for the tenant to have a right to terminate the lease. Eminent domain did not take any part of the Rite Aid store building.
 {¶ 33} We conclude that the trial court committed no error in overruling the motion for summary judgment of Rite Aid and in granting the motion for summary judgment of Monroe/Laskey. Assignment of Error No. 1 is not well-taken. *Page 10 
 {¶ 34} Under Assignment of Error No. 2, Rite Aid argues that even if the trial court were correct that a taking of the building was required under Article 23(i) for there to be a right to terminate the lease, that a constructive taking occurred and that a physical taking was not required. Rite Aid argues that a substantial interference with the leasehold interest generally is sufficient to constitute a constructive taking of the building for purposes of rights under the lease to terminate. We disagree.
 {¶ 35} In our view the lease is clear and unambiguous in setting forth conditions under which a right to terminate is created due to eminent domain. Where a partial taking of the building itself has occurred, under Article 23(i) there is a right to terminate. Where 20 percent or more of the parking spaces are taken, there is a right to terminate under Article 23(ii). Under Article 23(ii), denial of reasonable access to the building or parking areas for more than 30 days, there is also a right to terminate.
 {¶ 36} Under Assignment of Error No. 2, Rite Aid contends that Ohio law establishes that a taking is more than just physical possession and that it protects a taking of part as well as the whole of the property. Here, however, we are charged with the task of construing a written contract between sophisticated business entities. Under the express terms of this lease, the taking must be of the building alone under Article 23(i). Considering damage to business operations generally arising from a taking by eminent of other property (a strip of land fronting the roadway on the land where the building is located) to prove a constructive taking of the building as a basis for a right to terminate *Page 11 
under Article 23(i) is inconsistent with the plain meaning of the lease contract. There must be a taking of a portion of the building itself.
 {¶ 37} This case presents a written integrated contract between sophisticated business entities. "Where a contract is plain and unambiguous as herein, it does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties. Ohio Crane Co. v. Hiscks (1924), 110 Ohio St. 168, 172, 143 N.E. 388, 389; Ullman supra, at paragraph one of the syllabus."Aultman Hospital Ass'n. v. Community Mutual Ins. Co. (1989),46 Ohio St.3d 51, 55. We are not free under the guise of interpretation to rewrite this contract to make it more beneficial to the tenant where a portion of the demised property, but not part of the building itself, has been taken by eminent domain.
 {¶ 38} We find Assignment of Error No. 2 is not well-taken.
 {¶ 39} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., William J. Skow, P.J., CONCUR. *Page 1