[Cite as *SDC Univ. Circle Developer, L.L.C. v. Estate of Whitlow*, 2019-Ohio-11.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 107085

---

### SDC UNIVERSITY CIRCLE DEVELOPER, L.L.C.

#### PLAINTIFF-APPELLEE

vs.

### ESTATE OF PATRICK WHITLOW, M.D.

#### DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-877220

**BEFORE:** Handwork, J.,* S. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** January 3, 2019

**ATTORNEY FOR APPELLANT**

Charles V. Longo
Charles V. Longo Co., L.P.A.
25550 Chagrin Boulevard, Suite 320
Cleveland, OH 44122


**ATTORNEYS FOR APPELLEES**

Justine L. Konicki
Jon J. Pinney
Kohrman Jackson & Krantz, L.L.P.
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, OH 44114

SDC University Developer, L.L.C.
7139 Pine Street, Suite 110
Chagrin Falls, OH 44122

PETER M. HANDWORK, J.:*

{¶1} Defendant-appellant, the estate of Patrick Whitlow, M.D., appeals after the trial court denied it summary judgment, and instead granted summary judgment to plaintiff-appellee SDC University Circle Developer, L.L.C. We affirm.

{¶2} SDC filed a declaratory judgment action against the estate seeking an order declaring that the estate was not a member of the company, but rather, an assignee entitled only to receive economic distributions. The parties filed cross-motions for summary judgment. SDC, in its motion, argued that pursuant to the plain terms of the operating agreement, Whitlow's interest devolved to his estate upon his death. In the estate's motion, it argued that the operating agreement permitted Whitlow's entire interest, including his membership interest, to transfer to the estate. The trial court agreed with SDC, finding the operating agreement dictated that Whitlow's interest devolved to his estate upon death, and that as such, the estate was not a member of the company, and was instead an assignee entitled only to receive economic distributions.

{¶3} On appeal, the estate raises two interrelated assignments of error. In the first, it argues that the trial court erred by granting summary judgment to SDC. In the second, it argues that the trial court erred by denying it summary judgment.

{¶4} This court's review of a case decided on summary judgment is de novo, affording no deference to the trial court. *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 2017-Ohio-4292, 82 N.E.3d 1180, ¶ 8 (8th Dist.). Summary judgment is appropriate where the evidence properly before the trial court, when viewed most favorably to the nonmoving party, shows no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Civ.R. 56(C).

**{¶5}** When a court interprets the terms of a contract, its primary objective is to determine the parties' intent, and construe it to give effect to the intention. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). Where contract terms are clearly expressed, this court will not infer a contrary intent. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

**{¶6}** Because the estate's arguments are connected, we address both assignments of error together. The estate complains that SDC never produced an operating agreement that Whitlow signed and it rejects the operating agreement offered by SDC. It claims the estate owns Whitlow's entire interest, including his membership rights. And the estate argues that the operating agreement permits Whitlow's entire interest to be transferred the estate, including his membership interest in SDC. We reject each of these contentions in turn.

### I. Whitlow Acquired Interest in SDC Via Signed Subscription Agreement

**{¶7}** In November 2011, and prior to his death, Patrick Whitlow purchased a Class B membership interest in SDC for $200,000 via a subscription agreement that he signed. The subscription agreement outlined the terms of Whitlow's investment. As relevant to this case, Section 3 of the subscription agreement contains specific "representations, warranties and covenants" that govern Whitlow's investment, and to which Whitlow agreed by virtue of becoming a "Subscriber." In relevant part the subscription agreement provides:

c.      The Subscriber has been given full opportunity to review all material information relating to the Interest and the Company and has reviewed and understands the Operating Agreement of the Company and Articles of Organization of the Company.

d.      The Subscriber has been provided, to its satisfaction, the opportunity to ask questions concerning the Company and the terms and conditions of the offering of the Interest.

\* \* \*

f.      The Subscriber is aware that the Operating Agreement of the Company imposes certain limitations and restrictions on the circumstances under which the Subscriber may offer to sell, transfer or otherwise dispose of the Interest, so that it might not be possible to liquidate this investment readily and it may be necessary to hold the investment for an indefinite period.

\* \* \*

i.      The Subscriber hereby acknowledges that this Agreement shall not be transferable or assignable without the prior written consent of the Company.

Thus, the subscription agreement makes clear that Whitlow agreed that his membership interest in SDC was governed by the SDC operating agreement, irrespective of whether he signed the operating agreement.

## II. The SDC Operating Agreement

{¶8} The SDC operating agreement, originally adopted in June 2010, provides the basic purpose and function of the company. It outlines the levels of membership in the company: the "Managing Member" as well as other listed persons are the "Class A Members," and persons subsequently admitted to the company as members, would be the "Class B Members." The operating agreement lists the various rights and entitlements of the membership levels as well as the restrictions on the transfer of such interests. Pursuant to the operating agreement, Whitlow, as a Class B member, was entitled in some circumstances to inspect and copy the company's books and demand certain information relating to the company.

{¶9} The operating agreement also contains a section providing for and outlining the process for amending the operating agreement. For example, the managing member may unilaterally amend the operating agreement "if such amendment is solely for the purpose of clarification and does not change the substance hereof," or in order to substitute members.

However, any amendment that does not have "equal applicability" to all members requires unanimous member approval. Regardless, any amendment adopted or approved must be mailed to each member.

{¶10} As noted, SDC attached to its complaint the operating agreement amended in December 2011, after Whitlow became a Class B member. The estate makes an issue of this, complaining that the December 2011 version does not control because it was adopted after Whitlow became a member and because there is no evidence that Whitlow signed it. Instead, the estate argues that the original operating agreement controls, however it claims that this version was "not produced to the [t]rial court at any time and is not part of the record on appeal." We reject this claim outright, as the estate attached the original June 2010 operating agreement to its motion for summary judgment, and referred to it before the trial court as well as this court on appeal. Second, as related to this case, we find no meaningful difference between the original June 2010 operating agreement and the December 2011 amended version. The estate makes no argument to the contrary. As previously stated, Whitlow's subscription agreement simply refers to the operating agreement; it does not refer to a specific version of the operating agreement or require Whitlow's signature on the operating agreement before binding him to its terms.

{¶11} Article IX of the operating agreement outlines limitations on the transfer of SDC membership interests. In relevant part, Section 9.1(a) provides that absent specified consent, a Class B interest is nontransferable, and that absent specified consent, such a transferee of a Class B interest is only entitled to economic rights and not be a member:

> The Membership Interest owned by * * * a Class B Member * * * shall not be Transferable to any person(s) and any attempted Transfer shall be ineffective to

Transfer any such Membership Interest, unless the Managing Member[1] consents in writing to the transfer.

* * *

Upon the Transfer of a * * * Class B Member's Membership Interest, the transferee shall not become a Member, without the prior written consent of the Managing Member. A transferee who has not been admitted to the Company as a Member shall have only Economic Rights, and shall not have the right to * * * review the Company's books and records, or any other right, except as specifically permitted by law.

{¶12} Article IX section 9.3 places limitations on the transfer of a Class B membership upon death of such a member, and provides that any successor would not become a member absent specified consent:

> Upon the death * * * of * * * a Class B Member, * * * the Membership interest owned by such a deceased * * * Class B Member * * * shall be transferred to or devolve upon the heirs, devisees, representatives, beneficiaries, successors, assigns, or estate of the [deceased Class B Member]. * * * However no Person succeeding to the Membership Interest of * * * a Class B Member upon the events specified in this Section 9.3 shall become a Member without the consent of the Managing Member.

{¶13} Contrary to the estate's assertion, the operating agreement is clear: as a general rule, a member cannot transfer his or her membership interest without consent of the managing member. Even where the managing member consents to a transfer, the transferee does not become a member unless the managing member further consents. Here, the estate is entitled to Whitlow's interest, however, that interest devolved into economic rights only, as the managing member did not consent to estate membership.

---

[1] The original June 2010 operating agreement refers to the singular "Managing Member" here as well as elsewhere, whereas the December 2011 amended operating agreement refers to "Managing Members" in the plural. This difference does not impact our analysis and is only included for purposes of completeness.

**{¶14}** The estate nevertheless argues that the operating agreement permits transfer of membership rights absent managing member consent pursuant to Article IX, section 9.1(b). That section relevantly provides: "[a]ny * * * Class B Member may, without the consent of the Managing Member or any other Member, transfer a portion, or all of his Membership Interest by gift, bequest, sale, or exchange to or for the benefit of any family member."

**{¶15}** Even if this more general provision, relating to permitted family transfers, controls, as opposed to the more specific provision relating to death of a member, the result does not change. *But see Royal Appliance Mfg. Co. v. Fernengel*, 8th Dist. Cuyahoga No. 51268, 1987 Ohio App. LEXIS 8491, 16 (Aug. 27, 1987) ("It is well established that when a contract contains both general and specific language the more specific language controls."). Assuming that pursuant to section 9.1(b) Whitlow was able to transfer his membership interest without managing member consent, section 9.1(a) nevertheless still requires managing member consent before the transferee could become a member of the company.

**{¶16}** As such, regardless of whether the transfer of Whitlow's interest is viewed as a permitted transfer to family pursuant to section 9.1(b), or as a transfer on death pursuant to section 9.3, in the absence of managing member consent, the interest devolved into purely economic interests.

**{¶17}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
*PETER M. HANDWORK, JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

*(Sitting By Assignment: Judge Peter M. Handwork, retired, of the Sixth District Court of Appeals).