AULTMAN HOSPITAL ASSOCIATION ET AL., APPELLEES, *v.*
[COMMUNITY MUTUAL INSURANCE COMPANY, F.K.A.]
HOSPITAL CARE CORPORATION, APPELLANT.

[Cite as Aultman Hosp. Assn. *v.* Community Mut. Ins. Co. (1989),
46 Ohio St. 3d 51.]

(No. 88-1221—Submitted May 31, 1989—Decided October 11, 1989.)

*Taft, Stettinius & Hollister, W. Stuart Dornette* and *James E. Britain, Thomas B. Bassler, Vorys, Sater, Seymour & Pease, Michael J. Canter* and *James C. Becker,* for appellant.

*Porter, Wright, Morris & Arthur, James E. Pohlman* and *Daniel W. Costello,* urging reversal for *amicus curiae* Blue Cross and Blue Shield Association.

MOYER, C.J.   The principal question presented by this case is whether the contract between Blue Cross and the hospitals allows Blue Cross to issue nontraditional subscriber contracts.

In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties. The general rule is that contracts should be construed so as to give effect to the intention of the parties. *Employers' Liability Assurance Corp.* v. *Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, 7 A.L.R. 182, syllabus; *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244, 67 O.O. 2d 321, 313 N.E. 2d 374, paragraph one of the syllabus. Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions. *Henderson-Achert Lithographic Co.* v. *John Shillito Co.* (1901), 64 Ohio St. 236, 252, 60 N.E. 295, 298. See, also, *Charles A. Burton, Inc.* v. *Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E. 2d 265. Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence. See *Charles A. Burton, Inc., supra,* at paragraph two of the syllabus; *Steel Sanitary Co.* v. *Pangborn Corp.* (1930), 38 Ohio App. 65, 70, 9 Ohio Law Abs. 6, 8, 175 N.E. 615, 616-617. There can be no implied covenant in a contract in relation to

*Verner, Liipfert, Bernhard, McPherson & Hand, Chartered* and *Douglas J. Colton, pro hac vice,* for appellees.

any matter that is specifically covered by the written terms of the contract. *Kachelmacher* v. *Laird* (1915), 92 Ohio St. 324, 110 N.E. 933, paragraph one of the syllabus.

We recognize at the outset that the parties, by an express integration provision, limited their agreement to the written contract. The trial court and the court of appeals determined that the terms "subscriber" and "subscriber contracts," as provided in the 1959 agreement, are ambiguous and, relying on extrinsic evidence, held that the parties did not intend to include nontraditional subscribers within the context of the contract. In *Alexander* v. *Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 7 O.O. 3d 403, 374 N.E. 2d 146, paragraph two of the syllabus, we set a test for determining whether a term or terms contained in a contract are ambiguous: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."

According to the terms of the agreement at issue, a subscriber is any person to whom Blue Cross issues a contract for hospital services. We noted earlier that the terms "subscriber" and "service contracts" were defined in Article I of the agreement by mutual consent of the parties.

The only limitation on Blue Cross' ability to issue service contracts is expressly provided in the agreement between the parties. The restrictive language provides:

"* * * [N]o such contract * * * shall require the hospital[s] to provide services of a different or additional nature from those which it now provides. * * *"

This restriction does not confine Blue Cross to the issuance of contracts for which the subscriber pays a premium. It states only that the hospitals cannot be required to provide services different or additional to those currently provided by the hospitals. Where the parties expressly provide the only limitation on the issuance of service contracts, it is error for the trial court to admit extrinsic evidence providing for additional limitations, *Henderson-Achert Lithographic Co., supra,* at 254, 60 N.E. at 298, where the meaning is clearly evidenced from the overall contents of the instrument. Prior or contemporaneous evidence tending to vary the clear and unambiguous terms of the written contract is inadmissible. *Charles A. Burton, Inc., supra.*

The hospitals contend that Blue Cross is only allowed to issue traditional subscriber contracts. The contract construction urged by the hospitals would not be a construction at all but would amount to the making of a new contract for the parties which is not the function of the court. *Ullman* v. *May* (1947), 147 Ohio St. 468, 475, 34 O.O. 384, 387, 72 N.E. 2d 63, 67. In the absence of fraud or mistake, the hospitals' unexpressed intention cannot be implied in the contract. The language of the written contract which was signed by the parties is clear and does not forbid Blue Cross from issuing service contracts to groups of subscribers who compensate Blue Cross in a different manner than by the payment of premiums. Blue Cross's issuance of nontraditional service contracts is therefore not a breach of the agreement with the hospitals.

The court of appeals indicated that due to "unforeseen market forces of deregulation and increased competition," the hospitals stand to lose significant amounts of money in the absence of judicial intervention. It is not the responsibility or function of this court

to rewrite the parties' contract to provide for such circumstances. Where a contract is plain and unambiguous as herein, it does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties. *Ohio Crane Co.* v. *Hicks* (1924), 110 Ohio St. 168, 172, 143 N.E. 388, 389; *Ullman, supra,* at paragraph one of the syllabus.

For the foregoing reasons, we hold that where, as here, the parties following negotiations make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides. See *Henderson-Achert Lithographic Co., supra.*

Having determined that the disputed contract is an express integration of mutually accepted terms and conditions and that no breach occurred, we must decide whether recovery in *quantum meruit* was proper.

*Quantum meruit* is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered. See *Fox & Associates Co., L.P.A.* v. *Purdon* (1989), 44 Ohio St. 3d 69, 541 N.E. 2d 448; *Rice* v. *Wheeling Dollar Savings & Trust Co.* (1951), 155 Ohio St. 391, 44 O.O. 374, 99 N.E. 2d 301. The contract here describes the nature of services to be rendered and the compensation to be paid. The record does not reveal that Blue Cross received unjust enrichment outside the parameters of the express contract. In the absence of fraud, illegality or bad faith, the hospitals are entitled to compensation only in accordance with the terms of the written agreement. *Ullman, supra,* at paragraph three of the syllabus.

For the foregoing reasons, the judgment of the court of appeals is reversed and final judgment is entered for appellant.

*Judgment reversed.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.