[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 270.]

HAMILTON INSURANCE SERVICES, INC. ET AL., APPELLEES, *v.* NATIONWIDE

INSURANCE COMPANIES, APPELLANT.

[Cite as *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos*., 1999-Ohio-162.]

*Contracts—Employment agreement between independent insurance agent and insurance company—Termination of Corporate Agency Agreement by insurance company with or without cause not wrongful or in bad faith, when—Noncompetition clause reasonable, when.*

(No. 98-405—Submitted April 21, 1999 at the Hardin County and Ohio Northern University Law School Session—Decided September 1, 1999.)

APPEAL from the Court of Appeals for Richland County, Nos. 97CA27 and 97CA42.

————————————

{¶ 1} This case arises from the termination of an agency agreement between appellant, Nationwide Insurance Companies ("Nationwide"), and appellee, Hamilton Insurance Companies, Inc. Neil Hamilton was employed as an insurance agent for Western & Southern Insurance Company from 1975 to 1984. While still employed with Western & Southern, Hamilton began to explore the possibility of obtaining his own insurance agency.

{¶ 2} In 1984, Hamilton was contacted by Tom Dove, agency manager for Nationwide, about the possibility of taking over a Nationwide agency in Lucas, Ohio. Dove explained to Hamilton the process of becoming an Independent Nationwide Agent. As Hamilton understood the process, his first three years with Nationwide would serve as a validation period in which he would be an employee of Nationwide, pursuant to an employment contract with Nationwide. Following this three-year validation period, Hamilton understood that he would become an

independent agent, meaning that he "would run the business [his] own way." Thus, Hamilton hoped that he would achieve his goal of becoming an independent insurance agent at the completion of the three-year validation period.

{¶ 3} In October 1984, Hamilton and Nationwide executed an Agent Employment Agreement. This agreement provided that it "may be terminated at will by the Companies or by the Agent." Hamilton worked as an employee of Nationwide pursuant to this agreement until 1987, the end of the three-year validation period.

{¶ 4} Following the three-year validation period, Hamilton became an independent contractor and independent agent. This transition required him in May 1987 to execute another contract with Nationwide, designated the Agent's Agreement. The agreement provided that it could be cancelled by either party "at any time after written notice."

{¶ 5} Hamilton operated his insurance agency pursuant to the 1987 agreement until 1992 when he decided to incorporate the agency. As a result of this decision, Nationwide and Hamilton executed a Corporate Agency Agreement. As with the previous two agreements, the Corporate Agency Agreement contained a cancellation clause, but the Corporate Agency Agreement allowed either party to terminate the agreement "with or without cause." Additionally, this agreement contained a noncompetition clause and an integration clause. The agreement further provided that the agent was entitled to certain benefits, referred to as Agency Security Compensation ("ASC"), upon termination of the agreement, regardless of the reason for the termination. However, the noncompetition clause provided for the forfeiture of ASC benefits if the agent decided to compete with Nationwide within a radius of twenty-five miles and one year of termination.

{¶ 6} When Hamilton first began to work for Nationwide in 1984, he was furnished with a copy of Nationwide's Agency Administration Handbook. This handbook contains provisions entitled "Contractual Stability" and "Agent's

2

Administrative Review Board." The "Contractual Stability" section provides various reasons for the termination of the Agent's Agreement. These reasons include such things as breach of contract, criminal acts, dishonesty, or fraud, and "[a]ctions clearly contrary to the best interests of customers and the Company." The Agent's Administrative Review Board section of the handbook applies only to career agents and enunciates the purpose and procedures of the review board.

**{¶ 7}** In April 1991, Nationwide implemented the Auto Portfolio Management Plan ("APMP"). The APMP evaluates an agent's performance based on the "paid loss ratio" of the policyholders in the agency. Basically, this plan evaluates an agent's performance by comparing the amount of payments for losses made on the policy with the premium amounts paid by the insureds. Under the plan, an agent whose loss-to-paid-loss ratio is ninety percent or more is considered to be "historically unprofitable," and, absent improvement within the next two years, the agency may be terminated.

**{¶ 8}** In March 1992, Hamilton was advised by Nationwide that he was not meeting the necessary performance levels as measured by the APMP. He was, therefore, advised that he was subject to termination under the plan at the end of two years. On April 1, 1994, Nationwide terminated the agency agreement.

**{¶ 9}** Hamilton filed a complaint against Nationwide in the Richland County Court of Common Pleas, alleging that the April 1, 1994 termination by Nationwide was wrongful and in bad faith, and also that the termination clause of the Corporate Agency Agreement was unconscionable. The trial court found that the termination clause in the contract was a question for the jury. The court, therefore, allowed Hamilton to present evidence that the agreement was terminable only for just cause. The case proceeded to jury trial, and Hamilton was awarded $100,000. The court also determined that the forfeiture of benefits pursuant to the noncompetition clause was unconscionable and awarded Hamilton accumulated benefits. The court, therefore, entered judgment for Hamilton in the amount of

$208,164. The trial court overruled Nationwide's motion for judgment notwithstanding the verdict.

{¶ 10} Nationwide filed a timely notice of appeal in the Fifth District Court of Appeals. Hamilton filed a cross-appeal alleging that the trial court erred in failing to issue discovery sanctions against Nationwide. The court of appeals affirmed the trial court's judgment against Nationwide and overruled Hamilton's cross-appeal.

{¶ 11} The cause is now before this court upon the allowance of a discretionary appeal by Nationwide.

_____

*Inscore, Rinehardt, Whitney & Enderle* and *Larry L. Inscore*, for appellees.

*Arter & Hadden, L.L.P.*, and *Irene C. Keyse-Walker; Lutz & Oxley* and *Fred M. Oxley*, for appellant.

*Kerger & Kerger, Richard M. Kerger* and *Jessica C. Kerger*, urging affirmance for *amicus curiae*, Nationwide Insurance Independent Contractors Association.

*Spater, Gittes, Schulte & Kolman, Frederick M. Gittes* and *Kathaleen B. Schulte*, urging affirmance for *amici curiae*, Ohio Employment Lawyers Association, Ohio Academy of Trial Lawyers, Ohio Chapter of the National Association of State Farm Agents, and Cincinnati Employment Lawyers Association.

*Crabbe, Brown, Jones, Potts & Schmidt, Larry H. James* and *Amy Fulmer Stevenson*, urging reversal for *amici curiae*, Ohio Chamber of Commerce and the Ohio Association of Civil Trial Attorneys.

_____

**MOYER, C.J.**

{¶ 12} The principal issue in this case is whether the Corporate Agency Agreement, which governed the relationship between Nationwide and Hamilton at

4

the time of Nationwide's termination of the relationship, was clear and unambiguous, thus allowing Nationwide to terminate the agreement with or without cause. The trial court and the court of appeals determined that the contract was ambiguous and, therefore, allowed Hamilton to present additional evidence to support his contention that the Corporate Agency Agreement was terminable only for just cause. For the reasons that follow, the judgment of the court of appeals is reversed.

{¶ 13} In construing the terms of any contract, the principal objective is to determine the intention of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. Generally, contracts should be construed in a manner to give effect to the intentions of the parties. *Id.,* citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus; *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O 2d 321, 313 N.E.2d 374, paragraph one of the syllabus. We apply these basic principles to determine the intent of the parties in order to establish the terms of the Corporate Agency Agreement.

{¶ 14} When the terms included in an existing contract are clear and unambiguous, we cannot create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150. Here, paragraph nine of the Corporate Agency Agreement clearly provides that "the Agency or Nationwide have the right to cancel this Agreement at any time with or without cause." This section further provides that "the Agency shall have access to the Agents Administrative Review Board, and its procedures, as may exist from time to time."

{¶ 15} Hamilton argues that the Corporate Agency Agreement was not clear and unambiguous. We do not agree. The contract clearly states that either party may cancel the agreement "with or without cause." The agreement does provide

5

that the Agent shall have access to the Agent's Administrative Review Board. In addition, assuming the admissibility of the employee handbook, the "Contractual Stability" section in that handbook enumerates several reasons for which the Agent's Agreement may be cancelled. These reasons include breach of contract, criminal acts, dishonesty, and fraud, and "[a]ctions clearly contrary to the best interests of customers and the Company."

{¶ 16} While the handbook outlines several reasons for terminating the Agent's Agreement for just cause, and the handbook, as well as the Corporate Agency Agreement itself, refers to an administrative board that may review the performance of agents, these provisions are not inconsistent with the provision in the Corporate Agency Agreement allowing either party to terminate the contract without cause. Instead, we find that the Contractual Stability section of the employee handbook and the reference to an Agent's Administrative Review Board in both the Corporate Agency Agreement and the employee handbook merely detail several reasons for which the agreement may be terminated. However, this does not imply that either party may not terminate the agreement at any time with or without cause.

{¶ 17} Hamilton's assertion that the Corporate Agency Agreement is terminable only for cause is inconsistent with the clear wording of the agreement. There can be no implied covenants in a contract in relation to any matter specifically covered by the written terms of the contract itself. *Kachelmacher v. Laird* (1915), 92 Ohio St. 324, 110 N.E. 933, paragraph one of the syllabus. The agreement of parties to a written contract is to be ascertained from the language of the instrument itself, and there can be no implication inconsistent with the express terms thereof. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264. Here, to infer that termination may be based only upon just cause would directly contradict the express terms of the Corporate Agency Agreement. Furthermore, the integration clause in the agreement provides that "this Agreement

6

may be changed, altered, or modified only in writing signed by Agency and an officer of Nationwide." Therefore, we find that the Corporate Agency Agreement was terminable by either party with or without cause. Therefore, Nationwide did not breach the terms of the agreement when it terminated the contract in April 1994.

{¶ 18} In addition to finding that the Corporate Agency Agreement was ambiguous, the trial court found that the noncompetition clause contained in the agreement was unconscionable. The court of appeals disagreed with the ruling of the trial court, finding that the clause was reasonable. However, because the court of appeals found that Nationwide had breached the terms of the Corporate Agency Agreement, it held that the noncompetition clause was unenforceable. Based upon our finding that Nationwide did not breach the terms of the Corporate Agency Agreement, we must look to the terms of the noncompetition clause to determine if it is valid and enforceable.

{¶ 19} A noncompetition clause is reasonable if the restraint is no greater than necessary for the protection of the employer, does not place undue hardship on the employee, and is not injurious to the public. *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544, paragraph two of the syllabus. Here, the clause in question contained a restriction disallowing competition within a twenty-five-mile radius and one year of termination. We agree with the determination of the court of appeals that this is a reasonable restriction. Therefore, we conclude that Nationwide did not breach the Corporate Agency Agreement and hold that the noncompetition clause is valid and enforceable.

{¶ 20} For the reasons set forth in this opinion, the judgment of the court of appeals is reversed.

*Judgment reversed.*

DOUGLAS, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK, F.E. SWEENEY and PFEIFER, JJ., dissent.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 21} I would affirm the judgment of the court of appeals.

F.E. SWEENEY and PFEIFER, JJ., concur in the foregoing dissenting opinion.

_____