OPINION
{¶ 1} Petitioner-appellant Brian Renicker appeals the October 25, 2002 Judgment Entry of the Tuscarawas County Court of Common Pleas affirming the July 2, 2002 Magistrate's Decision finding appellant in contempt for his failure to timely pay a Huntington National Bank loan pursuant to a separation agreement. Petitioner-appellee is Betty Wardell, f.k.a. Renicker.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 10, 2000, the parties were granted a Decree of Dissolution of their marriage. On the same date, the trial court adopted a Separation Agreement ("Agreement") entered into by the parties. Appellant's counsel prepared the Agreement. Appellee was not represented by counsel.
 {¶ 3} The parties' Petition for Dissolution states in relevant part:
 {¶ 4} "4. Petitioners say that they have each agreed to and executed a Separation Agreement providing for a division of all property, alimony, and support, and the same is attached and incorporated herein."
 {¶ 5} The Separation Agreement provides for division of the real estate as follows:
 {¶ 6} "Real Property:
 {¶ 7} "2. Husband and Wife agree that Wife shall hereafter have all and sole right, title, interest, and possession of the residential real estate at 340 Fair Avenue, N.E., New Philadelphia, Ohio 44663, and that she shall be responsible for payment of the mortgage with Indian Village Savings and Loan and all taxes and insurance in regard to this real estate. Husband agrees to convey any interest he may have in the property to Wife by Quit Claim Deed.
 {¶ 8} "If Wife sells the said residential real estate within a year of the signing of this Agreement, then Husband and Wife agree to split the proceeds, 50-50, after the expenses of the mortgage and sale are paid.
 {¶ 9} "3. Husband and Wife agree that Husband shall hereafter have all and sole right, title, interest, and possession of the real estate at 346 Fair Avenue, N.E., New Philadelphia, Ohio 44663, and that he shall be responsible for payment of any mortgage indebtedness with Huntington National Bank and all taxes and insurance in regard to this real estate. Wife agrees to convey any interest she may have in the property to Husband by Quit Claim Deed."
 {¶ 10} The Agreement allocates the parties' debts as follows:
 {¶ 11} "8. The parties have satisfactorily divided the debts they have incurred and agree to hold each other harmless for the debts of the other.
 {¶ 12} "9. It is agreed that Wife will hereafter be responsible for payment of the mortgage and all taxes and insurance in regard to the residential real estate described in Item 2. Husband will hereafter be responsible for payment of the loan with Huntington Bank."
 {¶ 13} It is undisputed there was only one Huntington National Bank loan in existence at the time of the Agreement, and it was secured by mortgages on the parties' real estate. On September 1, 2000, appellant sold the property at 346 Fair Avenue, applying the proceeds of the sale to the Huntington loan. Appellee did not sell the property at 340 Fair Avenue. After selling his property, appellant ceased making payments on the Huntington loan, claiming he believed his obligation was extinguished by the sale of his property and any remaining indebtedness on the loan was attributable to appellee's 340 Fair Avenue property. As a result, the loan is in default.
 {¶ 14} On April 1, 2002, appellee filed a motion for contempt. On June 27, 2002, a hearing was held before Magistrate Karen Zajkowski. Magistrate Zajkowski issued a Magistrate's Decision filed on July 2, 2002, finding appellant in contempt for his failure to timely pay the Huntington loan pursuant to the parties' Agreement. The Magistrate found the Agreement clear, consistent and unambiguous.
 {¶ 15} Appellant filed his Objections to the Magistrate's Decision on July 12, 2002, and appellee filed a reply on August 5, 2002. The trial court held a hearing on the objections on October 21, 2002. Neither appellant, nor his counsel, appeared at the hearing. However, appellant filed a Memorandum in Support of Objections on October 22, 2002.
 {¶ 16} On October 25, 2002, the trial court issued a Judgment Entry, affirming the Magistrate's Decision; incorporated the Findings of Fact and Conclusions of Law contained in the Magistrate's Decision; and ordered the Recommendations contained in the decisions be wholly adopted as the order of the court upon journalization of the noted Judgment Entry. It is from the trial court's October 25, 2002 Judgment Entry appellant raises the following assignment of error:
 {¶ 17} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND PETITIONER-APPELLANT IN CONTEMPT FOR FAILING TO MAKE PAYMENTS IN ACCORDANCE WITH THE SEPARATION AGREEMENT."
 {¶ 18} An appellate court applies the abuse of discretion standard when reviewing a trial court's decision regarding whether a separation agreement is ambiguous. An abuse of discretion suggests more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140. It implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Id
 {¶ 19} A separation agreement is a contract between the parties; therefore, it is subject to the same rules of construction governing contracts. The determination as to whether a contract is ambiguous is a matter of law.
 {¶ 20} The trial court has broad discretion in clarifying ambiguous language. Despite this broad discretion, if no ambiguity exists, the trial court may not construe, clarify, or interpret the separation agreement to mean anything outside of which it specifically states, rather, the trial court must defer to the express terms of the contract and interpret it according to its plain, ordinary, and common meaning. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51. Moreover, a written agreement does not become ambiguous simply because its operation will work a hardship on one of the parties and create an advantage for the other. Ullman v. May (1947),147 Ohio St. 468. A separation agreement is not ambiguous if its terms are clear and precise. Lawler v. Burt (1857), 7 Ohio St. 340, 350.
 {¶ 21} The Agreement, drafted by appellant's counsel and agreed to by the parties is clear, precise and unambiguous regarding the Huntington loan. The release of the 346 Fair Avenue property as collateral on the loan is immaterial. The Agreement clearly and precisely defines appellant's obligation on the Huntington loan in both the division of real estate and the allocation of debt provisions. The Agreement clearly and precisely provides appellant "be responsible for payment of the loan with Huntington Bank."
 {¶ 22} Appellant maintains the Huntington loan originated, in part, to pay off the various credit card debts and automobile loans of both parties, and was secured by mortgages on both properties. Appellant maintains he entered into the Agreement with the belief he was only responsible for the Huntington loan so far as it related to his property at 346 Fair Avenue. When he sold his property at 346 Fair Avenue, he believed his obligation to pay the Huntington loan under the Agreement was extinguished.
 {¶ 23} Assuming appellant's beliefs were as stated, his beliefs are irrelevant to the issue at hand.[1] Appellant could choose to either pay the loan or not pay the loan. Appellant clearly chose and thereby intended not to pay. The Agreement is unambiguous as to appellant's obligation; therefore, the trial court did not abuse its discretion in finding appellant in contempt.
 {¶ 24} For the foregoing reasons, appellant's assignment of error is overruled.
 {¶ 25} The October 25, 2002 judgment of the Court of Common Pleas of Tuscarawas County is affirmed.
By: Hoffman, P.J., Wise, J., and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Appellant's remedy may be to seek relief from judgment under Civ.R. 60(B).