[Cite as *Bounty Minerals v. LL&B Headwater*, 2024-Ohio-944.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

BOUNTY MINERALS, LLC,

Plaintiff-Appellee,

v.

LL&B HEADWATER II, LP,

Defendant & Counterclaim Plaintiff-Appellant,

v.

MATTHEW WALIGURA ET AL.

Counterclaim Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 JE 0012

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 21-CV-399

**BEFORE:**
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment,
Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

*Atty. Paul B. Westbrook, Atty. Michael K. Reer* and *Atty. Desiree M. Malone,* Harris Finley & Bogle, PC, for Plaintiff-Appellee Bounty Minerals, LLC, and

*Atty. Timothy B. Pettorini, Atty. J. Benjamin Fraifogl, Atty. Jeremy D. Martin* and *Atty. Grant L. McLeod*, Roetzel & Andress, LPA, for Defendant-Appellant LL&B Headwater II, LP and

*Atty. J. Kevin West* and *Atty. Dallas F. Kratzer, III,* Steptoe & Johnson PLLC, for Defendants-Appellees Petrobella Energy Inc. and Principle Energy LLC and

*Atty. Cody Smith* and *Atty. Sean Jacobs*, Emens Wolper Jacobs & Jasin Law Firm, and *Atty. Brent A. Barnes,* Geiger Teeple Robinson & McElwee, PLLC, for Defendants-Appellees Matthew and Tina Beth Waligura.

Dated:  March 14, 2024

KLATT, J.

{¶1}    Appellant, LL&B Headwater II, LP, appeals from the May 10, 2023 judgment of the Jefferson County Court of Common Pleas granting Appellees', Bounty Minerals, LLC ("Bounty"), Principle Energy, LLC ("Principle"), Petrobella Energy, Inc. ("Petrobella"), and Matthew and Tina Beth Waligura (the "Waliguras"), (collectively "Appellees"), motions for summary judgment and overruling Appellant's cross-motion for summary judgment.

{¶2}    This is an oil and gas case concerning whether the Term Royalty Conveyance burdens subsequent oil and gas leases.  By its own express terms, the Term Royalty Conveyance at issue was limited to the oil and gas lease in effect at the time and only burdened subsequent oil and gas leases upon the occurrence of certain conditions precedent.  The evidence reveals that none of the conditions precedent occurred.

{¶3}    Nevertheless, on appeal, Appellant claims the Term Royalty Conveyance was ambiguous.  Appellant believes the Term Royalty Conveyance would apply to subsequent leases irrespective of whether the conditions precedent occurred.  Thus, Appellant argues the trial court erred in granting Appellees' motions for summary judgment and overruling its motion for summary judgment.

{¶4}    Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶5} On December 1, 1998, the Waliguras acquired all right, title, and interest, including the underlying oil and gas, in approximately 55 acres of real property in Jefferson County, Ohio, Tax Parcel No. 45-00890-000 (the "Property").

{¶6} On November 13, 2007, the Waliguras executed an oil and gas lease with Mason Dixon Energy, Inc. (the "Mason Dixon Lease"). The Mason Dixon Lease had a primary term of five years (with a lessee option to extend the primary term for an additional five years) and continued into a secondary term thereafter so long as oil and gas was produced in paying quantities from the Property.

{¶7} On November 11, 2011, the Waliguras conveyed the Term Royalty Conveyance to Principle. (12/21/2021 Complaint, Exhibit A). The Term Royalty Conveyance granted to Principle "a 1/8th royalty interest in and to 55.00 acres * * * so long as [the Mason Dixon Lease] remains in full force and effect." (*Id.*) The Term Royalty Conveyance purported to apply to new leases granted within three years "[i]n the event that the [Mason Dixon Lease] is terminated, surrendered, cancelled, released or is otherwise determined to be no longer valid at any time *before* the primary term or any extensions thereof or the secondary term of the Subject Lease would otherwise expire[.]" (Emphasis added); *Id.* Appellant alleges it is a successor-in-interest to the Term Royalty Conveyance claiming an 11.364 percent interest in the Property.

{¶8} Through several transactions, the lessee interest in the Mason Dixon Lease was conveyed to Hess Ohio Resources, LLC ("Hess"). On October 24, 2012, Hess executed the option to extend the primary term for an additional five years (to September 13, 2017). In 2013, Hess conveyed the Mason Dixon Lease to Ascent Resources-Utica, LLC ("Ascent").

{¶9} Principle conveyed the royalty interest to Advanced Royalty, LLC and Petrobella. On October 11, 2013, Principle and Petrobella conveyed a portion of the original royalty interest (an undivided 11.364 percent out of the original 12.5 percent royalty interest) to Appellant.

{¶10} Neither Ascent nor its predecessors-in-interest produced oil or gas from the Property pursuant to the Mason Dixon Lease, pooled the Property with any producing acreage, or otherwise commenced or engaged in operations for drilling any oil or gas

wells on the Property. Thus, the Mason Dixon Lease did not extend into a secondary term. Rather, the Mason Dixon Lease expired by its own terms at the end of the extended primary term on September 13, 2017.

**{¶11}** On September 20, 2017, the Waliguras executed a new oil and gas lease on the Property with Salt Fork Resources Operating, LLC ("Waligura Salt Fork Lease"). On November 2, 2017, the Waliguras conveyed an undivided 35 percent of their right, title, and interest in the oil and gas in the Property. Bounty is a successor to the 35 percent interest.[1]

**{¶12}** In early 2021, Bounty issued correspondence to Appellant, Principle, and Petrobella demanding a release of the royalty interest on the basis that the provision attaching the royalty interest to future leases executed within three years of the expiration of the Mason Dixon Lease violated the rule against perpetuities. Principle and Petrobella executed the releases, which resulted in two Releases of Term Royalty being recorded with the Jefferson County Official Records on April 6, 2021 (the "Principle Release") and September 21, 2021 (the "Petrobella Release"). Appellant continued to maintain that the Term Royalty Conveyance had not expired.

**{¶13}** On December 21, 2021, Bounty filed an original complaint against Appellant seeking to quiet title in the mineral interests at issue and requesting declaratory relief that Bounty's interest was not burdened by Appellant's claimed term royalty interest. On February 17, 2022, Appellant filed an answer and counterclaims against the Waliguras, Principle, Petrobella, and Ascent alleging that each breached some duty to Appellant. On April 19, 2022, the Waliguras filed a cross-claim also seeking to quiet title in the mineral interests and requesting declaratory relief that their interest was not burdened by Appellant's claimed term royalty interest.

**{¶14}** On June 2, 2022, Principle and Petrobella filed a motion for judgment on the pleadings, which was later joined by Bounty, requesting that the trial court deny

---

[1] The Waliguras initially conveyed an undivided 35 percent of their right, title, and interest in the oil and gas in and underlying the Property to VES Holdings, LLC ("VES") and Petunia Holdings, LLC ("Petunia"). VES and Petunia also purported to lease their interest in the oil and gas to Salt Fork Resources Operating, LLC (the "VES Salt Fork Lease"). On November 29, 2017, VES and Petunia conveyed a portion of their interest in the oil and gas to Bounty. In 2018, Ascent acquired the Waligura Salt Fork Lease and the VES Salt Fork Lease (together the "Salt Fork Leases"). The Property was then pooled into Ascent Resources' Griswold SE WYN JF Unit ("Griswold Unit") on December 20, 2018 pursuant to the Salt Fork Leases. Ascent has drilled two wells in the Griswold Unit.

Appellant's counterclaims on the grounds that the Term Royalty Conveyance unambiguously expired under its own terms and did not apply to subsequent lease agreements. Appellant filed a brief in opposition. The court ultimately denied the motion for judgment on the pleadings.

{¶15} On February 14, 2023, Bounty filed a motion for summary judgment seeking a declaratory judgment in its favor that the Term Royalty Conveyance terminated upon the expiration of the Mason Dixon Lease. Principle, Petrobella, and the Waliguras subsequently joined in Bounty's motion for summary judgment. On March 6, 2023, Appellant requested a continuance to conduct additional discovery, which was granted by the trial court. On April 21, 2023, Appellant filed a brief in opposition to the pending motions for summary judgment and a cross-motion for summary judgment.

{¶16} Bounty and the Waliguras each assert their 35 percent interest (Bounty) and 65 percent interest (Waliguras) are not burdened by the Term Royalty Conveyance which by its own terms only lasted so long as the Mason Dixon Lease was in force and effect. In contrast, Appellant asserts the Term Royalty Conveyance remains in effect and burdens both the 35 percent interest and the 65 percent interest.

{¶17} Following an April 24, 2023 hearing, the trial court determined the Term Royalty Conveyance does not burden either of the interests and granted Appellees' motions for summary judgment and denied Appellant's cross-motion for summary judgment.

{¶18} On May 10, 2023, the trial court entered a final appealable order granting Appellees' motions for summary judgment and overruling Appellant's cross-motion for summary judgment. Specifically, the court stated:

Having resolved all claims in this action by ruling on the motions for summary judgment filed in this action, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. The motions for summary judgment filed by Bounty, Principle, Petrobella, and the Waliguras are granted in all respects;

2. The motion for summary judgment filed by LL&B is denied in all respects;

3. All claims filed by LL&B in this action are dismissed with prejudice, and LL&B takes nothing on all claims brought in this action;

4. Title to an undivided 35.0000% interest in the fee minerals underlying real property in Jefferson County, Ohio, identified as tax parcel 45-00890-000 and totaling 55 acres, more or less, (the "Property") is quieted in Bounty against all claims and claimants;

5. Title to an undivided 30.6250% interest in royalties for minerals produced from the Property is quieted in Bounty against all claims and claimants;

6. Title to an undivided 65.0000% interest in the fee minerals underlying the Property and all royalties associated therewith are quieted in the Waliguras against all claims and claimants;

7. Bounty and the Waliguras hold the title quieted by this Order and Entry of Final Judgment free and clear of, and unburdened by, the expired Term Royalty Conveyance recorded November 22, 2011, in Volume 972, Page 479 of the Official Records of Jefferson County, Ohio (the "Term Royalty Conveyance");

8. It is further ORDERED, ADJUDGED, DECREED, AND DECLARED as follows:

a. Ohio courts apply principles of contract law when determining the rights of parties under oil and gas conveyance. *Bohlen v. Anadarko E&P Onshore, L.L.C.,* 150 Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, 2017-Ohio-4025, ¶ 13.

b. "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, ¶ 9, quoting *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus.

c. By its clear and unambiguous terms, the Term Royalty Conveyance was to terminate concurrently with the natural expiration of the Oil and Gas Lease recorded on November 13, 2007 in Volume 825, Page 558 of the Official Records of Jefferson County, Ohio ("Mason Dixon Lease").

d. The Mason Dixon Lease naturally expired September 13, 2017 and is no longer in effect.

e. The Term Royalty Conveyance terminated September 13, 2017 and is no longer in effect;

f. Bounty owns an undivided 35.0000% interest in the fee minerals and an undivided 30.6250% royalty interest in the minerals underlying the Property;

g. Bounty's undivided 35.0000% interest in the fee minerals and undivided 30.6250% royalty interest in the Property are not burdened by the Term Royalty Conveyance;

h. The Waliguras own an undivided 65.0000% interest in the fee minerals underlying the Property and all royalties associated therewith; and

i. The Waliguras' undivided 65.0000% interest in fee minerals underlying the Property and all royalties associated therewith are not burdened by the Term Royalty Conveyance.

(5/10/2023 Judgment Entry, p. 2-4).[2]

{¶19}  Appellant filed a timely appeal and raises one assignment of error.

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT TO COUNTERCLAIM-**

---

[2] The trial court directed the Clerk of Court to record a certified copy of the order to quiet title to Bounty and the Waliguras.  (*Id.* at p. 4).  The court dismissed with prejudice all other claims and indicated that Ascent is no longer a party as a result of Appellant's stipulation of dismissal.  (*Id.* at p. 1-2, 4).

Case No. 23 JE 0012

DEFENDANTS-APPELLEES AND DENIED PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

{¶20} In its sole assignment of error, Appellant argues the trial court erred in granting Appellees' motions for summary judgment and overruling Appellant's cross-motion for summary judgment. Appellant raises five issues: (1) "Whether the term royalty conveyance applied to leases entered into within three years following the termination of the Mason Dixon Lease"; (2) "Whether the term royalty conveyance violated Ohio's rule against perpetuities"; (3) Whether Matthew Waligura breached his warranty of title"; (4) "Whether Principle and Petrobella slandered LL&B's title to the royalty interest"; and (5) "Whether, in the alternative, questions of material fact remain to be litigated regarding the intent of the term royalty conveyance." (8/21/2023 Brief of Appellant, p. iii-iv).

{¶21} In reply, Appellees summarily assert the following:

By its own terms, the term royalty conveyance at issue burdens the oil and gas lease in effect at the time of the conveyance and burdens subsequent leases only upon the occurrence of certain conditions precedent. The evidence was undisputed at the trial court that none of the conditions precedent occurred. Rather, LL&B and its predecessors-in-interest received exactly what they bargained for: a proportionate share of any royalties generated by the lease in effect at the time of the term royalty conveyance. Now that the underlying lease is no longer in effect, LL&B seeks to re-trade the deal it and its predecessors made by claiming a percentage of royalties generated under subsequent oil and gas leases.

(9/29/2023 Joint Brief of Appellees, p. 3).

{¶22} Regarding summary judgment and the applicable standard of review, this court stated:

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial

Case No. 23 JE 0012

court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

"(T)he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 10-12.

**{¶23}** An oil and gas lease is a contract subject to the same rules of interpretation as other written agreements. *Shutway v. Chesapeake Exploration, LLC*, 7th Dist. Belmont No. 18 BE 0030, 2019-Ohio-1233, ¶ 27.

> The court's role in reviewing a contract is to determine the parties' intent and give effect to it. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270, 273, 714 N.E.2d 898 (1999). "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Cadle v. D'Amico*, 7th Dist., 2016-Ohio-4747, 66 N.E.3d 1184, ¶ 22, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989).

*Marquette ORRI Holdings, LLC v. Ascent Res.-Utica, LLC*, 7th Dist. Belmont No. 21 BE 0035, 2022-Ohio-3786, ¶ 26.

**{¶24}** In its first issue, Appellant raises whether the Term Royalty Conveyance applied to leases entered into within three years following the termination of the Mason Dixon Lease.

**{¶25}** Upon consideration, we find the trial court did not err in applying a plain reading of the Term Royalty Conveyance. "In lieu of an ownership interest, the lessor typically maintains only a royalty interest in the oil and gas as negotiated in the terms of the instrument, along with a reversionary interest if the lease does not continue past the primary term by the happening of some enumerated condition." *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, ¶ 62. Here, the term royalty interest granted to Appellant's predecessors-in-interest expressly stated that it lasted only so long as the Mason Dixon Lease remained in effect. *See* (Exhibit A) ("This Term Royalty Conveyance shall remain in full force and effect for so long as that certain Oil and Gas Lease (the 'Subject Lease') * * * remains in full force and effect.")

**{¶26}** The Term Royalty Conveyance contains an anti-washout provision. Consistent with the provision, the conveyance applied to subsequent leasehold interests if one or more of the following conditions precedent were met:

> In the event that the Subject Lease is terminated, surrendered, cancelled, released or is otherwise determined to be no longer valid *at any time before the primary term or any extensions thereof or the secondary term of the Subject Lease would otherwise expire*, then the grant contained in this Term Royalty Conveyance shall apply to any lease or leases granted by Grantor * * * within three years after the Subject Lease ceases to be valid.

(Emphasis added.) (*Id.*)

**{¶27}** The record reveals the Mason Dixon Lease expired at the end of the primary term and not after the establishment of the secondary term. Thus, the Term Royalty Conveyance ended when the Mason Dixon Lease ended and burdens neither Bounty's 35 percent interest nor the Waliguras' 65 percent interest.

**{¶28}** Appellant relies on the application of the last antecedent rule that the qualifier phrase, "before the primary term or any extensions thereof or the secondary term of the Subject Lease would otherwise expire," modifies only the phrase, "is otherwise determined to be no longer valid," and does not modify the words, "terminated, surrendered, cancelled [or] released." *See* (Exhibit A).

**{¶29}** Under the last antecedent rule, "'referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.'" *State ex rel. Prade v. Ninth Dist. Court of Appeals*, 151 Ohio St.3d 252, 2017-Ohio-7651, ¶ 15, quoting *Carter v. Youngstown Div. of Water*, 146 Ohio St. 203, 209 (1946). "The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'" 2A Singer, *Statutes and Statutory Construction*, Section 47:33, 369 (6th Ed. 2000), quoting *In re Estate of Kurtzman*, 65 Wash.2d 260, 264, 396 P.2d 786 (1964).

**{¶30}** This case involves a concise and integrated clause. Thus, the last antecedent is the entire clause preceding the modifier ("terminated, surrendered, cancelled, released or otherwise determined to be no longer valid.") *See Paroline v. U.S.*, 572 U.S. 434, 447 (2014), quoting *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920) ("'When several words are followed by a clause which is applicable

as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all'"").

**{¶31}** The Supreme Court of Ohio and our Sister Courts have refused to apply the last antecedent rule in a manner that leads to strained readings of the contract. *See Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 26 (refusing to apply last antecedent rule in a manner that "imposes a forced construction"); *Safeco Ins. Co. of Illinois v. Motorists Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 86124, 2006-Ohio-2063, ¶ 17-19 (refusing to apply last antecedent rule where interpretation suggested "is not reasonable construction of the contract and appears contrary to the intention of the parties"); *Evans v. Avon*, 9th Dist. Lorain No. 15CA010879, 2016-Ohio-5460, ¶ 12 (refusing to apply last antecedent rule in a manner that would "contravene * * * intent.")

**{¶32}** Contrary to Appellant's position, a lease may terminate by a variety of causes other than expiration. *See Wilson v. Beck Energy Corp.*, 7th Dist. Monroe No. 15 MO 0010, 2016-Ohio-8564, ¶ 19 (an oil and gas lease may terminate before the end of the primary term, e.g., if delay rentals are not timely paid); *Potts v. Unglaciated Industries, Inc.,* 7th Dist. Monroe No. 15 MO 0003, 2016-Ohio-8559, fn. 9 (an oil and gas lease may terminate at the end of the primary term and before commencement of the secondary term, e.g., if oil and gas production is never established in the primary term); *see, e.g., Rudolph v. Viking International Resources Co., Inc.*, 4th Dist. Washington No. 15CA26, 2017-Ohio-7369 (an oil and gas lease may terminate during the secondary term if the habendum clause is not satisfied, e.g., if oil and gas are initially produced but production becomes uneconomic over time). By its own terms, the Term Royalty Conveyance only extended to new leases if the Mason Dixon Lease terminated prior to the conclusion of the primary term or prior to when the secondary term would otherwise expire.

**{¶33}** The anti-washout provision in the Term Royalty Conveyance is both concise (contains a list of only five terms) and integrated (fully expresses the intent of the parties). The Term Royalty Conveyance prevents the lessor and lessee from artificially terminating the lease and washing-out the term royalty owner's interest. Stated differently, the provision protects the term royalty owner from actions that would artificially terminate the Mason Dixon Lease "before the primary term or any extensions thereof or the secondary term of the Subject Lease would otherwise expire[.]" (Exhibit A).

**{¶34}** Appellant's construction of the Term Royalty Conveyance would result in it extending to any new lease executed within three years of the Mason Dixon Lease's termination, surrender, cancellation, or release. However, the Term Royalty Conveyance expressly states the intent of the parties was for the "Term Royalty Conveyance [to] remain in full force and effect for so long as" the Mason Dixon Lease was in effect. (Exhibit A). The Term Royalty Conveyance's anti-washout provision allows it to extend to future leases in the event the Mason Dixon Lease did not reach its full term (if the Mason Dixon Lease was terminated prior to the end of the primary term or before the secondary term would otherwise expire).

**{¶35}** The record reveals the Mason Dixon Lease reached its full term by expiring at the end of the extended primary term. Thus, the Term Royalty Conveyance ended at the same time as the Mason Dixon Lease (just as the parties intended by agreeing the Term Royalty Conveyance would be in full force and effect only "for so long as" the Mason Dixon Lease was in full force and effect).

**{¶36}** Appellant attempts to raise on appeal what various non-lawyers at Bounty thought concerning the applicability of the Term Royalty Conveyance over time. However, opinions of lay witnesses with no association or personal knowledge of the execution of the Term Royalty Conveyance or the parties' intentions are not applicable in construing an unambiguous contract. *See Tera, LLC v. Rice Drilling D, LLC*, 7th Dist. Belmont No. 21 BE 0047, 2023-Ohio-273, ¶ 51 ("insofar as the contract language is unambiguous, we need not consider any parol evidence.") The evidence establishes that Bounty purchased its interest in the Property in 2018, approximately seven years after execution of the Term Royalty Conveyance.

**{¶37}** Appellant's first issue is without merit.

**{¶38}** In its second issue, Appellant raises whether the Term Royalty Conveyance violated Ohio's rule against perpetuities.

In Ohio, the rule against perpetuities is codified in R.C. 2131.08, which reads in relevant part:

"(A) (* * *) [N]o interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest."

As * * * stated in *Schafer v. Deszcz* (1997), 120 Ohio App.3d 410, 414, 698 N.E.2d 60, "(t)he fundamental purpose of the rule against perpetuities was, and is, to prevent restraints on the alienation of property that might be perpetual or unreasonably long, while, in recognition of a property owner's rights to the use and disposition of his property, allowing restraints limited within the strict period of the rule. *Quarto Mining Co. v. Litman* (1975), 42 Ohio St.2d 73, 76-77 (* * *)." The rule, however, by its very terms, does not apply to property rights that have already vested. *Cleveland Trust Co. v. McQuade* (1957), 106 Ohio App. 237, 256, 142 N.E.2d 249. Similarly, the rule does not apply to contractual rights. *Zyndorf/Serchuk, Inc. v. Sparagowski* (May 21, 1999), 6th Dist. No. L-98-1300.

*Marinelli v. Prete*, 6th Dist. Erie No. E-09-022, 2010-Ohio-2257, ¶ 26-28.

**{¶39}** Because the Term Royalty Conveyance did not spring forward to new leases, including the Salt Fork Leases, the Term Royalty Conveyance does not burden either Bounty's 35 percent interest or the Waliguras' 65 percent interest irrespective of whether it violates the Ohio rule against perpetuities. A review of Bounty's February 14, 2023 motion for summary judgment reveals that Bounty did not include the application of the rule against perpetuities as a grounds for summary judgment in its motion. Thus, the trial court was not required to reach the merits of whether the Term Royalty Conveyance violated the Ohio rule against perpetuities in its May 10, 2023 judgment and this issue need not be ruled upon by this court. *See, generally, Hills and Hollers, LLC v. Ohio Gathering Co., LLC*, 7th Dist. Belmont No. 17 BE 0040, 2018-Ohio-3425, ¶ 6; *Conny Farms, Ltd. v. Ball Resources, Inc.,* 7th Dist. Columbiana No. 09 CO 36, 2011-Ohio-5472, ¶ 15.

**{¶40}** Appellant's second issue is without merit.

**{¶41}** In its third issue, Appellant raises whether Matthew Waligura breached his warranty of title. Appellant argues the trial court erred in granting summary judgment with

respect to its breach of warranty claim contending that "[b]ecause the Term Royalty Conveyance is still of full force and effect, Matthew Waligura, as one of the grantors, is bound by the warranties contained therein[.]" (8/21/2023 Brief of Appellant, p. 22). However, as stated, the trial court found:

> c. By its clear and unambiguous terms, the Term Royalty Conveyance was to terminate concurrently with the natural expiration of the Oil and Gas Lease recorded on November 13, 2007 in Volume 825, Page 558 of the Official Records of Jefferson County, Ohio ("<u>Mason Dixon Lease</u>").

> d. The Mason Dixon Lease naturally expired September 13, 2017 and is no longer in effect.

> e. The Term Royalty Conveyance terminated September 13, 2017 and is no longer in effect[.]

(5/10/2023 Judgment Entry, p. 3).

**{¶42}** The record establishes the trial court correctly ruled the Term Royalty Conveyance is not in full force and effect and, therefore, did not err in granting summary judgment against Appellant with respect to its claims against Matthew Waligura, including its breach of warranty claim.

**{¶43}** Appellant's third issue is without merit.

**{¶44}** In its fourth issue, Appellant raises whether Principle and Petrobella slandered its title to the royalty interest.

**{¶45}** "Slander of title is a tort claim." *Potts, supra*, at ¶ 14. "A person who claims slander of title must show: a statement disparaging the title was published; the statement was false; the statement was made with reckless disregard of its falsity; and this caused actual or special damages." *Id.*

**{¶46}** Appellant fails to establish and the record fails to reveal any of the foregoing elements. *Id.* In addition, Appellant's slander of title claims against Principle and Petrobella are contingent on the Term Royalty Conveyance retaining full force and effect. However, as addressed, the Term Royalty Conveyance is no longer in full force and effect. *See* (5/10/2023 Judgment Entry, p. 3). Thus, the trial court did not err in granting

summary judgment against Appellant with respect to its slander of title claims against Principle and Petrobella.

**{¶47}** Appellant's fourth issue is without merit.

**{¶48}** In its fifth issue, Appellant raises whether, in the alternative, questions of material fact remain to be litigated regarding the intent of the Term Royalty Conveyance, claiming that it is ambiguous.

> When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273, 1999 Ohio 162, 714 N.E.2d 898 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 31 Ohio B.R. 289, 509 N.E.2d 411 (1987), paragraph one of the syllabus. Thus, where the terms of a contract are clear and unambiguous, a court cannot look beyond the plain language of the agreement to determine the rights and obligations of the parties. *Cocca Dev.,* 7th Dist. No. 08MA163, 2010-Ohio-3166, at ¶ 26, citing *Aultman Hospital Ass'n v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). However, if a contract is reasonably susceptible to more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed. *Id.,* citing *City of Steubenville v. Jefferson Cty.,* 7th Dist. No. 07JE51, 2008-Ohio-5053, ¶ 22.

*G.A.I. Capital Group LLC v. Lisowski*, 7th Dist. Mahoning No. 23 MA 0052, 2023-Ohio-4802, ¶ 28, quoting 7 *Med. Sys., LLC v. Open MRI of Steubenville,* 7th Dist. Jefferson No. 11 JE 23, 2012-Ohio-3009, ¶ 27.

**{¶49}** The Term Royalty Conveyance can be given a definite legal meaning because the language of the contract, as addressed, is clear. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11 (A contract is unambiguous if it can be given a definite legal meaning).

**{¶50}** Appellant's fifth issue is without merit.

{¶51} Accordingly, the trial court did not err in granting Appellees' motions for summary judgment and overruling Appellant's cross-motion for summary judgment.

## CONCLUSION

{¶52} For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The May 10, 2023 judgment of the Jefferson County Court of Common Pleas granting Appellees' motions for summary judgment and overruling Appellant's cross-motion for summary judgment is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**